LIPOSCHAK et al., Appellants,

v.

ADMINISTRATOR, BUREAU OF WORKERS' COMPENSATION, Appellee. ▮

[Cite as *Liposchak v. Ohio Bur. of Workers' Comp.* (2000), 138 Ohio App.3d 368.]

Court of Appeals of Ohio,
Seventh District, Jefferson County.

No. 98–JE–26.

Decided March 23, 2000.

See, also, 73 Ohio St.3d 194, 652 N.E.2d 753.

*Stewart R. Jaffy, Eric S. Bravo* and *Marc J. Jaffy,* for appellants.

*Betty D. Montgomery,* Attorney General, and *Dennis H. Behm,* Assistant Attorney General, for appellee.

---

GENE DONOFRIO, Judge.

Plaintiffs-appellants, Edith Liposchak and Walter Liposchak, appeal a partial dismissal and grant of summary judgment against them in the Jefferson County Court of Common Pleas.

While employed with defendant, Wheeling Pittsburgh Steel Corporation, the decedent, Robert Liposchak, suffered an occupational disease in the course of and arising out of his employment which resulted in his death on May 3, 1995.

Prior to his death, Robert filed an application for permanent total disability compensation, which was granted pursuant to a writ of mandamus ordered by the Ohio Supreme Court. *State ex rel. Liposchak v. Indus. Comm.* (1995), 73 Ohio St.3d 194, 652 N.E.2d 753.

From 1983 to his death in 1995, Robert lived with his brother, Walter Liposchak, in Wellsburg, West Virginia. Walter testified that Robert provided no direct support to their mother, Edith Liposchak.

From 1980 to the present, Edith has lived by herself in a house also in Wellsburg, West Virginia. Edith's income consists of Social Security, and disbursements from her deceased husband's pension fund and black-lung fund.

Robert had not been paid any of his permanent total disability benefits at the time of his death. He was also eligible for permanent partial disability benefits which were unpaid and accrued at the time of death. Robert was never married and had no children.

On April 26, 1996, appellants filed two administrative claims with the Industrial Commission. Edith, pursuant to R.C. 4123.59, filed a C–2 "First Notice of Death & Preliminary Application," requesting death benefits as a dependent of Robert Liposchak, and payment of funeral and medical expenses. Edith and Walter, in their respective capacities as a parent of Robert and on behalf of the estate, filed pursuant to R.C. 4123.60 a C–6 "Application for Payment of Compensation Accrued at the Time of Death," claiming a right to the accrued but unpaid permanent partial and permanent total compensation due to Robert at the time of his death. On May 22, 1996, the Administrator of the Bureau of Workers' Compensation denied both claims.

Appellants appealed this order to the District Hearing Officer ("DHO"). On July 17, 1996, the DHO issued an order which stated in pertinent part as follows:

"The order of the Administrator, dated 05/22/1996, is modified to the following extent.

"It is the finding of the District Hearing Officer that the death was a result of an occupational disease in the course of and arising out of employment.

"The decedent's natural parent, Edith Liposchak, was decedent's presumed dependent. That a death award, payable at $246.50 per week beginning on 05/03/95 in accordance with the statute and in the total sum of $3,000.00 be granted to decedent's natural parent.

"The decedent's mother, said Edith Liposchak, is a presumed dependent under ORC 4123.59(D)(2).

"That medical and hospital and funeral expenses be paid in accordance with the statute and the rules of the Ohio Bureau of Workers' Compensation and the Industrial Commission.

"This finding is based on the report of Dr. Wald and the Death Certificate.

"The part of the Administrative order of 05/22/96 dealing with the C–6 for accrued compensation is affirmed. The presumed dependency provision is in ORC 4123.59, but there is not a similar provision in ORC 4123.60 for accrued compensation."

Appellants appealed this decision to the Staff Hearing Officer ("SHO"). On August 28, 1996, the SHO issued an order which stated in pertinent part as follows:

"The order of the District Hearing Officer, from the hearing dated 07/17/1996, is vacated. Therefore, the C–6, filed 04/26/96 is denied. The C–2, filed 04/26/96, is granted in part and denied in part as follows.

"It is the order of the Staff Hearing Officer that the record is clear that claimant had no direct lineal descendants. Further, decedent's mother cannot reasonable [sic] be viewed as a dependent in any form, prospective, presumed or otherwise, for the following reasons:

"1) Decedent's mother never lived with the decedent during his adult life nor did he ever support her in any manner.

"2) File evidence (i.e., exhibit 'F' in claimant's representative's suit for PTD) indicates claimant was mentally retarded and that he was a man of little means.

"3) Decedent lived with his brother at the time of his death and was quite dependent on his brother.

"All these factors lead to the inevitable conclusion that decedent's mother was never dependent upon him nor was she ever likely to be dependent upon him.

"The C–2 application is, however, granted to the extent that any outstanding medical bills secondary to treatment of recognized file conditions prior to decedent's death plus any outstanding expenses related to his funeral are herewith authorized paid in accordance with BWC rules and guidelines."

Appellants appealed to the Industrial Commission ("commission"), but the Industrial Commission issued an order on September 18, 1996 refusing claimant's appeal of the order issued by the SHO.

On November 22, 1996, appellants filed a notice of appeal from the order of the SHO dated August 28, 1996. Appellants filed a complaint on December 20, 1996

in the Jefferson County Court of Common Pleas seeking reversal of the commission's final decision and relief under R.C. 4123.59 and R.C. 4123.60.

On October 9, 1997, defendant-appellee, Administrator, Bureau of Workers' Compensation, filed a motion to dismiss appellants' action for lack of subject matter jurisdiction, pursuant to Civ.R. 12(B)(1). Appellee argued that appellants' complaint raised an "extent of disability" issue rather than appellants' "right to participate" in the benefits of the workers' compensation fund and, therefore, the Jefferson County Common Pleas Court lacked jurisdiction to review the decision of the commission.

On November 19, 1997, the court issued the following entry:

"1. Plaintiffs' claims of the Estate pursuant to R.C. 4123.60 are dismissed without prejudice to the filing of an action in mandamus.

"2. The claim of Edith Liposchak alleging her status as a dependent of Robert Liposchak under R.C. 4123.59 is not dismissed.

"3. Trial upon the dependency claims of Edith Liposchak pursuant to R.C. 4123.59 is hereby scheduled for Thursday, June 18, 1998 at 9:00 A.M."

On October 29, 1997, Edith filed an action in the Tenth District Court of Appeals requesting a writ of mandamus ordering the commission to vacate its order denying her R.C. 4123.59 and 4123.60 claims and to enter an order granting her claims. Walter filed a similar action relating to his R.C. 4123.60 claim. The matter was referred to a magistrate and on December 1, 1997, the commission filed a motion to dismiss.

On January 13, 1998, a magistrate filed a decision granting the commission's motion to dismiss. The magistrate found that the commission's denial of appellants' claims on the grounds that neither was a dependent of Robert was a decision that was appealable to a court of common pleas under R.C. 4123.512. The magistrate found that since R.C. 4123.59 and 4123.60 each involve a threshold dependency determination, their claims concerned a most basic right to participate issue, precluding relief by way of a writ of mandamus. On September 17, 1998, the Tenth District Court of Appeals affirmed the decision of the magistrate and adopted it as its own. *State ex rel. Liposchak v. Indus. Comm.* (Sept. 17, 1998), Franklin App. No. 97APD10–1427, unreported (Memorandum Decision). Appellants appealed this decision to the Ohio Supreme Court and the case is still before that court under case No. 98–2287.

Meanwhile in the Jefferson County Court of Common Pleas, appellee filed a motion for summary judgment on the remaining issue of Edith's R.C. 4123.59 claim. Edith did not file a brief in opposition of summary judgment, but instead moved to strike the motion for summary judgment. Appellants relied upon the evidence already in the record and the legal arguments made at the motion to

strike and summary judgment hearing. On May 20, 1998 the court granted appellee's motion for summary judgment.

On June 19, 1998 appellants filed a notice of appeal from the order of the partial dismissal dated November 19, 1997 and from the order granting summary judgment on May 20, 1997.

Appellants raise eight assignments of error. Appellants' first assignment of error states:

"The trial court erred in partially granting defendants-appellees', Administrator, Bureau of Workers' Compensation and the Industrial Commission of Ohio, motion to dismiss. [This Assignment of Error relates to the Trial Court's decision granting appellees' motion to dismiss, dated November 19, 1997. (*Sic.*)]"

Appellants' second assignment of error states:

"The trial court has subject matter jurisdiction under R.C. 4123.512 over a claim for unpaid workers' compensation benefits, and the court thus committed error in granting a motion to dismiss the R.C. 4123.60 claim. [This Assignment of Error relates to the Trial Court's decision granting appellees' motion to dismiss, dated November 19, 1997. (*Sic.*)]"

Appellants' third assignment of error states:

"Having been dismissed from relief in a mandamus action for lack of subject matter jurisdiction, for the reason that they had an adequate remedy at law by an appeal under R.C. 4123.512, an order denying appellants relief in the court of common pleas for lack of subject-matter jurisdiction denies to appellants a remedy for a right, in contravention of Article I, Section 16 of the Ohio Constitution, and the Fourteenth Amendment to the United States Constitution guarantee appellants the opportunity to seek relief in some court. [This Assignment of Error relates to the Trial Court's decision granting appellees' motion to dismiss, dated November 19, 1997. (*Sic.*)]"

In so far as the basis for resolution of appellants' first three assignments of error is the same, they will be consolidated for review.

Appellants argue that the trial court erred in dismissing appellants' claims brought under R.C. 4123.60. Appellants claim that pursuant to the Tenth District's ruling, the commission's order denying a claim made pursuant to R.C. 4123.60 involves the appellants' "right to participate" in the workers' compensation system, and therefore is appealable to the common pleas court pursuant to R.C. 4123.512.

Appellants argue that were this court not to reverse the order of the court of common pleas, then appellants would be denied access to relief or a remedy at

law. Appellants further claim that this would deprive them of a day in any court, contrary to a fundamental right set forth in Section 16, Article I of the Ohio Constitution and the Fourteenth Amendment to the United States Constitution.

Appellee claims that the trial court did not err in the partial dismissal of appellants' claims. Appellee argues that the partial order of dismissal on November 19, 1997 simply dismissed the claims of appellant Walter Liposchak, as executor of the estate of Robert Liposchak. Appellee argues that since the decedent, Robert Liposchak's right to participate in the state insurance fund had already been established, the claim of Walter Liposchak, as executor, was merely a claim for unpaid compensation arising under that claim. Therefore appellee claims that this does not involve an issue of right to participate, but rather an extent of disability issue that must be brought in mandamus.

Appellee further argues that the trial court did exercise jurisdiction over appellant Edith's R.C. 4123.60 claim. Specifically, appellee argues that the court exercised jurisdiction in its May 20, 1998 order of summary judgment. Appellee argues that the trial court exercised jurisdiction over the R.C. 4123.60 claims, and appellants were simply unsatisfied by the final result.

In addressing appellants' assignments of error, it must first be established which claims the trial court dismissed in its order of partial dismissal dated November 19, 1997. While it is clear that the trial court did not engage in a detailed discussion of its orders of partial dismissal and summary judgment, a closer examination of these orders demonstrates which claims were dismissed on the motion for dismissal, and which claims survived up to and until summary judgment.

Contrary to appellee's position, the trial court's order of partial dismissal on November 19, 1997, dismissed not only appellant Walter Liposchak's claim as executor of the estate of Robert Liposchak, but also dismissed Edith's claim under R.C. 4123.60. As appellants point out, paragraph one of the November 19, 1997 order of partial dismissal states, "Plaintiffs' claims of the Estate pursuant to R.C. 4123.60 are dismissed without prejudice." The trial court clearly chose to use the plural possessive, indicating that both Edith's and Walter's R.C. 4123.60 claims were dismissed.

While the term "claims of the Estate" may seem to create a determination that only Walter Liposchak's R.C. 4123.60 claim was dismissed, a further reading of this passage supports the determination that Edith's R.C. 4123.60 claim was also dismissed in conjunction with Walter's R.C. 4123.60 claim.

Appellants have brought three distinct claims: (1) one R.C. 4123.60 claim by Walter, (2) one R.C. 4123.60 claim by Edith, (3) and one R.C. 4123.59 claim by Edith. Not only does the order of partial dismissal read "Plaintiffs," but it also

reads "claims." It is clear that the trial court dismissed more than one claim in its dismissal order, and since Walter only brought one R.C. 4123.60 claim, the multiple claims included under the term "claims" clearly encompasses Edith's R.C. 4123.60 claim as well.

A further reading of the November 19, 1997 partial dismissal order and the May 20, 1998 summary judgment order also lend support to this reading. Not only does the partial dismissal order indicate a dismissal of multiple R.C. 4123.60 claims, but the only claim the court reserved jurisdiction over was Edith's R.C. 4123.59 claim.[1] The May 20, 1998 order of summary judgment simply resolved the remaining R.C. 4123.59 claim.

■ Having determined that the November 19, 1997 order of partial dismissal encompassed appellants' R.C. 4123.60 claims, this court also recognizes that the November 19, 1997 order for the dismissal without prejudice of appellants' R.C. 4123.60 claims is not a final and appealable order.

Pursuant to R.C. 2502.02, an order from a lower court is only subject to review by an appellate court when the trial court has issued a "final order."

R.C. 2505.02 provides in relevant part:

"(B) An order is a final order that may be reviewed, affirmed, modified, or reversed with or without retrial, when it is one of the following:

"(1) An order that affects a substantial right in an action that in effect determines the action and prevents a judgment;

"(2) An order that affects a substantial right made in a special proceeding or upon a summary application in an action after judgment[.]"

This court recently addressed the same issue in *Van–American Ins. Co. v. Schiappa* (Apr. 29, 1999), Jefferson App. No. 97–JE–42, unreported, 1999 WL 260904. The appellants in *Van–American* appealed to this court and asked it to review the trial court's dismissal of a complaint without prejudice. After examining the case law, this court concluded that the dismissal of the complaint without prejudice was not a final appealable order that is subject to review by this court. *Id.*

In this case, the trial court's order of dismissal without prejudice does not qualify as a final and appealable order under R.C. 2505.02. A dismissal without prejudice is not a final determination of the rights of the parties. It does not affect a substantial right that determines the action and prevents a judgment. R.C. 2505.02(B)(1).

---

**1.** "The claim of Edith Liposchak alleging her status as a dependent * * * under R.C. 4123.59 is not dismissed." Order of Partial Dismissal dated November 19, 1997.

Appellants argue that if the trial court's order of partial dismissal is not reversed by this court, appellants will have been denied a day in any court in contravention of Section 16, Article I of the Ohio Constitution and the Fourteenth Amendment to the United States Constitution. Appellants claim that since the Tenth District ruled that the R.C. 4123.60 action was not a proper subject of mandamus, but instead should have been filed in a court of common pleas, this court must reverse the order of dismissal or else appellants will be denied a right to a remedy.

Appellants' position overlooks the very nature of the lower court's order. The lower court's dismissal permitted the appellants to file a new complaint in the future. Because appellants are free to file a new complaint, the trial court's dismissal was not a final order.

The dismissal of appellants' mandamus action did not bar a subsequent filing of a claim for legal relief. The mandamus claim and the appellant's claim for statutory relief are different and independent in nature. See *State ex rel. Strategic Capital Investors, Ltd. v. McCarthy* (1998), 126 Ohio App.3d 237, 710 N.E.2d 290. Accordingly, the Tenth District's dismissal did not impact the appellants' ability to bring a subsequent claim for legal relief pursuant to statutory authority.

█ We are cognizant of the fact that the decisions of the Jefferson County Common Pleas Court and Tenth District Court of Appeals are at odds with each other, thereby placing appellants' R.C. 4123.60 claims in an awkward procedural posture. Although we have found that according to established law appellants' are free to refile those claims in common pleas court, we are also aware that the ultimate and controlling issue of which court properly has jurisdiction over the claims is still pending in the Ohio Supreme Court due to appellants' appeal of the Tenth District's decision. Waiting to refile the R.C. 4123.60 claims until and based upon the Supreme Court's determination of the matter is in the best interest of judicial economy and expediency. Therefore, we find as we did in *Van–American, supra,* that the savings provisions of R.C. 2305.19 do not commence to run until the date of the Supreme Court's decision.

Accordingly, appellants' first, second, and third assignments of error are without merit.

Appellants' fourth assignment of error states:

"The trial court erred in granting defendants-appellees', Administrator, Bureau of Workers' Compensation and the Industrial Commission of Ohio, motion for summary judgment. [This Assignment of Error relates to the Trial Court's decision granting appellees' motion for summary judgment, dated May 20, 1998. (*Sic.*) ]"

Appellants' fifth assignment of error states:

"A factual question exists on the issue of prospective dependency where the evidence shows the deceased son demonstrated filial affection by giving gifts to his elderly mother, who is on a fixed income and ninety-two years of age at the time of the deceased worker's passing away, and the evidence further shows no estrangement between the deceased worker and his mother. Therefore, the court errs in granting summary judgment on what is a fact question for the jury. [This Assignment of Error relates to the Trial Court's decision granting appellees' motion for summary judgment, dated May 20, 1998. (*Sic.*)]"

Appellants' sixth assignment of error states:

"It is not necessary that a deceased workers' compensation claimant have supported a family member during the decedent's life in order to find the family member 'prospective[ly] dependen[t]' upon the deceased claimant pursuant to R.C. 4123.59(D). Therefore, the court errs in refusing to find a relationship of prospective dependency between a deceased worker and his elderly mother merely because he had not provided her direct support in his lifetime. [This Assignment of Error relates to the Trial Court's decision granting appellees' motion for summary judgment, dated May 20, 1998. (*Sic.*)]"

Appellants' eighth assignment of error states:

"Where the evidence shows the deceased son demonstrated filial affection by the giving of gifts to his elderly mother, who is on a fixed income and ninety-two years of age at the time of the deceased worker's passing away, and the evidence further shows no estrangement between the deceased worker and his mother, the court errs in granting summary judgment and failing to find the mother dependent on the deceased worker pursuant to the last paragraph of R.C. 4123.59(D). [This Assignment of Error relates to the Trial Court's decision granting appellees' motion for summary judgment, dated May 20, 1998. (*Sic.*)]"

In so far as the basis for resolution of appellant's fourth, fifth, sixth, and eighth assignments of error is the same, they will be consolidated for review.

After the trial court dismissed Edith's and Walter's R.C. 4123.60 claims, the only remaining claim was Edith's R.C. 4123.59 claim for death benefits as a dependent of Robert. That claim was dismissed when the trial court granted appellee's motion for summary judgment on May 20, 1998.[2] Appellant's fourth, fifth, sixth, and eighth assignments of error each attack the propriety of that decision.

---

2. Since appellants' remaining assignments of error concern only Edith's R.C. 4123.59 claim, use of the word "appellant" is meant to refer only to appellant Edith Liposchak.

First, appellant argues that when the evidence is construed in the light most favorable to the appellant, a genuine issue of material fact exists as to whether Edith is "wholly dependent" or "partly dependent" upon the deceased as provided for by R.C. 4123.59.

Second, appellant also argues that a factual question exists as to Edith's prospective dependency under R.C. 4123.59(D). Appellant argues that there is a probability, had decedent Robert Liposchak lived to actually receive his disability benefits, some of this money would have gone to his mother. Appellant contends that this relationship is evident through the previous gifts by decedent to his mother. Appellant asserts that where the evidence shows the decedent demonstrated affection to his elderly mother by giving her gifts, and where the evidence fails to show estrangement between the deceased worker and his mother, a question of fact exists as to whether the mother is prospectively dependent under R.C. 4123.59.

In furtherance of appellant's argument of prospective dependency, appellant argues that it is not necessary for the decedent to have supported a family member during the decedent's life in order to find the family member prospectively dependent on the decedent.

■ An appellate court reviews a trial court's decision on a motion for summary judgment *de novo*. *Grafton v. Ohio Edison Co.* (1996), 77 Ohio St.3d 102, 105, 671 N.E.2d 241, 244–245. Summary judgment is properly granted when: (1) there is no genuine issue as to any material fact; (2) the moving party is entitled to judgment as a matter of law; and (3) reasonable minds can come to but one conclusion, and that conclusion is adverse to the party against whom the motion for summary. judgment is made. *Harless v. Willis Day Warehousing Co.* (1978), 54 Ohio St.2d 64, 66, 8 O.O.3d 73, 74, 375 N.E.2d 46, 47; Civ.R. 56(C).

"[A] party seeking summary judgment, on the ground that the nonmoving party cannot prove its case, bears the initial burden of informing the trial court of the basis for the motion, and identifying those portions of the record that demonstrate the absence of a genuine issue of material fact on the essential element(s) of the nonmoving party's claims. The moving party cannot discharge its initial burden under Civ.R. 56 simply by making a conclusory assertion that the nonmoving party has no evidence to prove its case. Rather, the moving party must be able to specifically point to some *evidence* of the type listed in Civ.R. 56(C) which affirmatively demonstrates that the nonmoving party has no evidence to support the nonmoving party's claims. * * * " (Emphasis *sic.*) *Dresher v. Burt* (1996), 75 Ohio St.3d 280, 293, 662 N.E.2d 264, 274.

The "portions of the record" or evidentiary materials listed in Civ.R. 56(C) include the pleadings, depositions, answers to interrogatories, written admissions,

affidavits, transcripts of evidence, and written stipulations of fact that have been filed in the case. The court is obligated to view all the evidentiary material in a light most favorable to the nonmoving party. *Temple v. Wean United, Inc.* (1977), 50 Ohio St.2d 317, 4 O.O.3d 466, 364 N.E.2d 267.

"If the moving party fails to satisfy its initial burden, the motion for summary judgment must be denied. However, if the moving party has satisfied its initial burden, the nonmoving party then has a reciprocal burden outlined in Civ.R. 56(E) to set forth specific facts showing that there is a genuine issue for trial and, if the nonmovant does not so respond, summary judgment, if appropriate, shall be entered against the nonmoving party." *Dresher*, 75 Ohio St.3d at 293, 662 N.E.2d at 273–274.

Pursuant to R.C. 4123.59, where an injury or occupational disease contracted by a worker causes his death, benefits shall be paid to persons determined to be "wholly dependent" or "partially dependent" upon the deceased. R.C. 4123.59(B), (C), (D).

R.C. 4123.59 provides in pertinent part:

"(D) The following persons are presumed to be wholly dependent for their support upon a deceased employee:

"(2) * * *

"It is presumed that there is sufficient dependency to entitle a surviving natural parent or surviving natural parents, share and share alike, with whom the decedent was living at the time of his death, to a total minimum award of three thousand dollars.

"The administrator may take into consideration any circumstances which, at the time of the death of the decedent, clearly indicate prospective dependency on the part of the claimant and potential support on the part of the decedent. No person shall be considered a prospective dependent unless such person is a member of the family of the deceased employee and bears to him the relation of surviving spouse, lineal descendant, ancestor, or brother or sister. The total award for any or all prospective dependency to all such claimants, except to a natural parent or natural parents of the deceased, shall not exceed three thousand dollars to be apportioned among them as the administrator orders.

"In all other cases, the question of dependency, in whole or in part, shall be determined in accordance with the facts in each particular case existing at the time of the injury resulting in the death of such employee, but no person shall be considered as dependent unless such person is a member of the family of the deceased employee, or bears to him the relation of surviving spouse, lineal descendant, ancestor, or brother or sister."

Based on the evidence presented in this case and construing it in a light most favorable to the appellant, we find that the trial court did not err by granting summary judgment in favor of appellee.

First, it cannot be said that Edith qualifies as "wholly" dependent under R.C. 4123.59(B), nor can it be said that Edith qualifies under R.C. 4123.59(C) as partially dependent.

"Dependent" is defined as "a person who relies on another for support." Webster's Collegiate Dictionary (10 Ed.1998) 310. The record indicates that appellant did not rely on the decedent for any support and thus failed to qualify as a whole or partial dependent under R.C. 4123.59(B) and (C). Appellant is guaranteed income for life from Social Security, survivor's pension, and from her deceased husband's black lung fund. Appellant presented no evidence that her funds constituted inadequate sustenance or that she would be forced to rely on someone else for sustenance support. As previously stated, at the time of decedent's death in 1995 and at the time of decedent's diagnosis, Edith did not live with or rely on in anyway, the decedent for support. Decedent provided no monetary support to Edith from 1954 until his death in 1995. Decedent was mildly mentally retarded, had trouble managing money, and was constantly in debt. Appellant could not have relied on him for financial support.

Next, in addition to not qualifying as wholly or partially dependent under subsections (B) and (C), appellant does not qualify under R.C. 4123.59(D)(2) for presumed dependency. First, in order for a parent to be presumed dependent under the statute, the plain language of the statute requires that the parent live with the decedent at the time of decedent's death. "It is presumed that there is sufficient dependency to entitle a surviving natural parent * * *, with whom the decedent was living at the time of his death, to a total minimum award of three thousand dollars." R.C. 4123.59(D)(2).

From the evidence, it is clear that Edith is not entitled to the presumption of dependency under R.C. 4123.59(D)(2). Appellant Edith Liposchak did not live with decedent at the time of his death, and thus is not eligible for the presumption of dependency benefits under R.C. 4123.59(D)(2). Decedent died in May of 1995, and from 1983 until the time of his death, decedent lived with his brother Walter Liposchak. In contrast, from 1980 to the present Edith Liposchak has resided at her own premises in Wellsburg, West Virginia.

R.C. 4123.59(D)(2) clearly requires that the decedent must have been living with the surviving natural parent at the time of his death in order to be presumed dependent. Because Robert was living with Walter and not Edith at the time of his death, Edith is not presumed dependent.

■ Appellants further argue that circumstances that existed at the time of decedent's death demonstrate that Ms. Liposchak was a prospective dependent and thus should qualify as a prospective dependent under R.C. 4123.59(D)(2). Appellant contends that it is not necessary that the decedent had supported a family member during the decedent's life in order to find the family member prospectively dependent.

In determining whether an individual is eligible for prospective dependency relief, R.C. 4123.59(D)(2) provides that "[t]he administrator may take into consideration any circumstances which at the time of the death of the decedent, clearly indicate prospective dependency on the part of the claimant and potential support on the part of the decedent."

As appellants point out, it is not necessary that a decedent's claimant have supported a family member during the decedent's life in order to find the claimant prospectively dependent upon the deceased. That is one of the factors, but it may not be the sole indicia of prospective dependency. However, as required by statute, the appellant must demonstrate both prospective dependency on the part of the claimant and potential support on the part of the decedent.

■ In an appeal of a workers' compensation case, the burden of proof, as well as the burden of going forward, remains with claimant. *Byrum Constr. v. Ohio Bur. of Workers' Comp.* (1996), 111 Ohio App.3d 782, 783, 677 N.E.2d 376, 376–377. Appellant has introduced no circumstances or evidence that clearly indicates both prospective dependency on the part of the claimant and potential support on the part of the decedent. A court may only consider those circumstances that clearly indicate prospective dependency. R.C. 4123.59(D)(2).

Appellant did not receive monetary support from decedent or live with him during the time in question. There is no evidence of any potential support on the part of decedent. At the time of decedent's death, decedent's estate was valued at approximately $9,000. The evidence presented showed that appellant received nothing from decedent's estate. This supports the proposition that there would be no prospective support on the part of the decedent to his mother.

In addition to the lack of support on the part of decedent, there is absolutely no evidence in the record to support the conclusion that appellant was prospectively dependent on decedent. Appellant introduced no evidence to show that appellant's expenses have or will dramatically increase in the future. Appellant acknowledges that in addition to her Social Security income, she receives survivor benefits from her late husband's pension, as well as benefits from the federal government's black lung program. Further, the uncontradicted evidence shows that appellant has a steady income for the remainder of her life, and under no

circumstances has been or would be forced to rely upon decedent for financial support. Appellant's argument rests entirely on speculation.

R.C. 4123.59 also provides that "[i]n all other cases, the question of dependency * * * shall be determined in accordance with the facts in each particular case existing at the time of the injury, resulting in the death of such employee."

Accordingly, appellant has failed to present any evidence that would hint to a conclusion that she was prospectively dependent on decedent. In examining the question of prospective dependency, one must look to the circumstances "at the time of the injury resulting in the death of such employee." R.C. 4123.59(D)(2).

When examining the circumstances at the time of injury, the evidence reveals that there was no prospective dependency on the part of Edith Liposchak. There is absolutely no evidence in the record to support the conclusion that appellant was prospectively dependent on decedent. As previously stated in detail *supra,* there was no evidence introduced by appellants to show that appellant's expenses have or will dramatically increase in the future or exceed her current sources of income. The uncontradicted evidence shows that appellant has a steady income for the remainder of her life, and under no circumstances would be forced to rely upon decedent for financial support. Further, appellant has lived by herself, in her own house, and has never been forced to rely on decedent for sustenance contributions. After examining the circumstances at the time of decedent's death, there is no indicia of prospective dependency on the part of appellant.

Appellant argues that while she did not live with the decedent, any relationship short of total estrangement is inappropriate for summary judgment. Appellant further argues that we should consider state intestate succession and aged parent laws. Appellant contends that it is not necessary that a decedent provide prior support in order for the court to engage in a finding of prospective dependency. Appellant cites numerous out-of-state cases in support of this proposition. *Jones v. Texas Employers' Ins. Assn.* (Tex.Civ.App.1925), 268 S.W. 1004; *Shaffer v. Williams Bros., Inc.* (1931), 226 Mo.App. 635, 44 S.W.2d 185; *Pittsburgh C.C. & St.L. Ry. Co. v. Collard's Admr.* (1916), 170 Ky. 239, 185 S.W. 1108.

Appellant's reliance on the aforementioned cases is misplaced. While it is true that the foregoing cases did not necessarily require prior support by the decedent, all of the aforementioned cases demonstrated or proved some form of prospective dependency on the part of the claimant, something that is nonexistent in the present case. The aforementioned cases all dealt with an established dependency, ergo, all of the claimants concretely established their prospective dependency on the decedent.

Appellant also claims that the trial court erred and ignored the fact that had decedent lived to actually receive his disability benefits, he would have received a

lump sum compensation as well as a monthly payment for the rest of his life. Appellant claims that this raises the probability that some of the money would have gone to assist her.

Appellant's argument is based upon "what might have happened or what could have happened." Appellant has presented no substantive evidence of actual dependency. Appellant asks this court to grant her the status of prospectively dependent based solely upon speculation of what her needs may be at some future point in time. Appellant has cited no controlling authority to support such a broad interpretation of prospective dependency. There simply is no basis for a finding of prospective dependency in the present case. To issue a finding of prospective dependency would be unduly speculative and contravene the plain language of R.C. 4123.59(D)(2) requiring clear indicia of prospective dependency.

Appellants also argue that where the evidence shows the deceased son demonstrated filial affection by giving Christmas gifts to a mother who is on a fixed income, and because there is no evidence of estrangement between decedent and appellant, the court erred in granting summary judgment and in failing to find the mother dependent on the deceased. Appellants offer no case law for this proposition. As previously noted, the burden of proof is on the party claiming the entitlement to prospective dependency. Nothing offered by appellant demonstrates that she would be in a position to require such support. The prospective dependency statute does not allow for a person to receive such relief when there is no dependency. The very nature of the word "dependency" implies that the claimant has a substantiated need and not just a use for the extra money. As previously discussed in detail *supra*, there has been absolutely no evidence introduced to support or establish a relationship of prospective dependency and none of the evidence introduced offers any proof to the contrary.

Accordingly, appellants' fourth, fifth, sixth, and eighth assignments of error are without merit.

Finally, appellant's seventh assignment of error states:

"R.C. 4123.59(D), in granting the status of presumed dependent to a parent of a deceased workers' compensation claimant who resided with the claimant, but not granting presumed dependency status to a parent of a deceased workers' compensation claimant who did not reside with the claimant, denies to the non-cohabiting parent equal protection of the laws in contravention of the Fourteenth Amendment to the United States Constitution and Article I, Section 2 of the Ohio Constitution. Therefore, the court errs in finding a non-cohabitating parent not to be a prospective dependent of the deceased worker. [This Assignment of Error relates to the Trial Court's decision granting appellees' motion for summary judgment, dated May 20, 1998. (*Sic.*) ]"

Appellant argues that the portion of R.C. 4123.59(D) which grants presumed dependency to the surviving parent or parents who resided with a deceased workers' compensation claimant, but not to such parents not residing with the deceased violates the Equal Protection Clauses of the Fourteenth Amendment to the United States Constitution, and Section 2, Article I of the Ohio Constitution. Appellant argues that the "presumption of dependency" provision of R.C. 4123.59(D) does not further a legitimate state interest. Appellant contends that the presumption of dependency language in R.C. 4123.59(D)(2) is not rationally related to a legitimate state interest.

Appellant contends that the appellee's claim of a legitimate state interest in the form of the conservation of, or financial integrity of the state insurance fund does not constitute a legitimate state interest. In support, appellant cites *State ex rel. Patterson v. Indus. Comm.* (1996) 77 Ohio St.3d 201, 672 N.E.2d 1008, and *State ex rel. Nyitray v. Indus. Comm.* (1983), 2 Ohio St.3d 173, 2 OBR 715, 443 N.E.2d 962, for the proposition that protection of the state insurance fund, is not by itself, a valid state interest.

Appellant further argues that even if there is a legitimate state interest involved here, the state has enacted a law with no rational basis or relation to the legitimate state interest or objective sought to be served by the statute.

■■ An appellate court's standard of review when examining the constitutionality of a statute is *de novo*. See *Ohio Historical Soc. v. State Emp. Relations Bd.* (1993), 66 Ohio St.3d 466, 471, 613 N.E.2d 591, 595–596. Legislative enactments are presumed constitutional. *Adamsky v. Buckeye Local School Dist.* (1995), 73 Ohio St.3d 360, 361, 653 N.E.2d 212, 213–214. "[D]iscrimination against individuals or groups is sometimes an inevitable result of the operation of a statute. The mere fact that a statute discriminates does not mean that the statute must be unconstitutional." *Roseman v. Firemen & Policemen's Death Benefit Fund* (1993), 66 Ohio St.3d 443, 446–447, 613 N.E.2d 574, 577. See, also, *Adamsky,* 73 Ohio St.3d at 362, 653 N.E.2d at 214. "However, all laws, including legislation involving workers' compensation, are subject to the limitations imposed by the Equal Protection Clauses of the United States and Ohio Constitutions." *Patterson,* 77 Ohio St.3d at 204, 672 N.E.2d at 1010.

The Fourteenth Amendment to the United States Constitution provides, in part, that "[n]o State shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; * * * nor deny to any person within its jurisdiction the equal protection of the laws." Similarly, Section 2, Article I of the Ohio Constitution states that "[a]ll political power is inherent in the people. Government is instituted for their equal protection and benefit, and they have a right to alter, reform, or abolish the same, whenever they may deem

it necessary; and no special privileges or immunities shall ever be granted, that may not be altered, revoked, or repealed by the General Assembly."

These constitutional guarantees require that all similarly situated individuals be treated in a similar manner. *State ex rel. Doersam v. Indus. Comm.* (1989), 45 Ohio St.3d 115, 119, 543 N.E.2d 1169, 1173. "In other words, laws are to operate equally upon persons who are identified in the same class." *Patterson,* 77 Ohio St.3d at 204, 672 N.E.2d at 1011.

Ohio's system of compensating employees and their dependents is predicated upon Section 35, Article II of the Ohio Constitution. This provision establishes that one objective of such a system is to compensate "workmen and their dependents, for death, injuries or occupational disease, occasioned in the course of such workmen's employment." Clearly, R.C. 4123.59 was enacted to fulfill this objective of compensating employees and their dependents.

Workers' compensation legislation can survive constitutional scrutiny under the Equal Protection Clause if the statute at issue is "rationally related to the accomplishment of some state objective at least as important as the purpose contained in the Constitution [Section 35, Article II] and reflected in the statute." *Nyitray,* 2 Ohio St.3d at 176, 2 OBR at 717–718, 443 N.E.2d at 964–965. "[A] classification of persons will not be suspect when the law establishing the classification relates to a legitimate governmental purpose. If the means employed by the law to achieve its ends is the classification of persons who are accorded differing benefits or assessed differing burdens, the law will be tested under the equal protection guarantee. If the classification does not meet or does not have a sufficient relationship to a required governmental purpose, then the law cannot withstand scrutiny under the Equal Protection Clause." *Doersam,* 45 Ohio St.3d at 120, 543 N.E.2d at 1174. Furthermore, "[e]qual protection of the laws requires the existence of reasonable grounds for making a distinction between those within and those outside a designated class." *Id.,* quoting *Nyitray,* 2 Ohio St.3d at 175, 2 OBR at 716–717, 443 N.E.2d at 964.

R.C. 4123.59(D)(2) reads in pertinent part:

"It is presumed that there is sufficient dependency to entitle a surviving natural parent or surviving natural parents, share and share alike, with whom the decedent was living at the time of his death, to a total minimum award of three thousand dollars."

It is apparent that R.C. 4123.59(D)(2) raises a question of equal protection by creating two separate classes of individuals with different entitlements. R.C. 4123.59(D)(2) creates two classes of individuals, those cohabitating parents who are entitled to the presumption of dependency, and those non-cohabitating parents who are not entitled to the presumption of dependency.

This classification relates to a valid and legitimate state interest. The purpose of the statute and the classification is to compensate workmen *and their dependents.* Section 35, Article II, Ohio Constitution. Appellant's reliance on *Patterson* and *Nyitray* is misplaced.

We acknowledge that conserving funds is not a viable basis for denying compensation *to those entitled to it. Patterson,* 77 Ohio St.3d at 206, 672 N.E.2d at 1011–1012; *Nyitray,* 2 Ohio St.3d at 177, 2 OBR at 718–719, 443 N.E.2d at 965–966. However, in both *Patterson* and *Nyitray,* dependency had already been established. The court was only addressing a random distinction in the level of benefits between claimants injured before or after January 1, 1976. The court simply stated that conserving the integrity of the fund was not a valid interest in that particular case, where to do so would be at the expense of one who is entitled to compensation.

In this case, the classification between cohabitation and non-cohabitation of family members is rationally related to the state's goal of compensating the *true* dependents of injured workers. The distinction is based on the reasonable presumption that those parents who had been residing with the decedent are more likely to have been dependent on the decedent.

Additionally, *Patterson* and *Nyitray* both involved claimants who had no additional avenues of relief outside of the given statutes. The statutory language foreclosed any further possibility of relief. In this case, although appellant is not entitled to a presumption of dependency under this portion of R.C. 4123.59(D)(2), this did not automatically foreclose her from being found a "dependent" under the remaining sections of R.C. 4123.59. Based upon the facts and circumstances in each particular case, a non-cohabitating parent could be found wholly, partially, or prospectively dependent.

In conclusion, we hold that the classification created by R.C. 4123.59 is rationally related to a legitimate government objective. Therefore, R.C. 4123.59 does not violate the Equal Protection Clauses of the Ohio and United States Constitutions.

Accordingly, appellant's seventh assignment of error is without merit.

The decision of the trial court is affirmed.

*Judgment affirmed.*

VUKOVICH and WAITE, JJ., concur.