OPINION
{¶ 1} Plaintiff-appellant, Christopher Stalker, appeals from a judgment of the Franklin County Court of Common Pleas granting summary judgment to defendants-appellees, Industrial Commission of Ohio and Administrator, Bureau of Workers' Compensation, on plaintiff's complaint alleging that R.C. 4123.56 violates plaintiff's right to equal protection of law in specifying a cap on benefits based on the state-wide average weekly wage. While plaintiff does not set forth an assignment of error, he raises an issue, which we treat as an assignment of error:
Is the Franklin County Court of Common Pleas['] Decision and Entry Overruling Relator's Motion in Support of Declaratory Judgment a violation of the Equal Protection Clause of both the United States and Ohio Constitutions?
Because a rational basis supports the cap on benefits found in R.C. 4123.56, we affirm.
 {¶ 2} On June 18, 1999, plaintiff filed a complaint in the Hamilton County Common Pleas Court challenging on equal protection grounds, the constitutionality of R.C. 4123.56 insofar as it provides a cap on disability benefits. Pursuant to defendants' motion for a change of venue, the matter was transferred to the Franklin County Common Pleas Court.
 {¶ 3} On April 19, 2000, defendants filed a motion for summary judgment, and at the same time responded to plaintiff's "Motion in Support of Declaratory Judgment." By decision and entry filed May 8, 2001, the trial court denied plaintiff's motion and granted summary judgment to defendants. In doing so, the court noted the parties agreed that plaintiff's equal protection claim was subject to analysis under the rational-basis test. Applying that test, the trial court determined "[d]efendants have identified a legitimate purpose for establishing a statutory maximum or `wage cap' for the payment of compensation under R.C. 4123.56." (Decision, 7.) Specifically, the court cited the difficulty in setting premiums in the absence of a wage cap, as well as "the equally important goal of providing an incentive for workers to return to the workplace upon recovery * * *." (Decision, 8.) Concluding that the statutory maximum, or "wage cap," furthers the bureau's ability to set premiums and provides an incentive for injured workers to return to work, the trial court found plaintiff "failed to sustain his burden of proving that the `wage cap' phrase contained within R.C. 4123.56 violates the Equal Protection Clauses of the United States and Ohio Constitutions." (Decision, 8-9.)
 {¶ 4} On appeal, plaintiff challenges the trial court's determination, contending the provision at issue in R.C. 4123.56
violates plaintiff's right to equal protection under the Ohio and United States Constitutions.
 {¶ 5} Our analysis begins with the presumption that legislative enactments are constitutional. Beatty v. Akron CityHosp. (1981), 67 Ohio St.2d 483, 493. "A statute can be declared invalid only when its unconstitutionality is shown beyond a reasonable doubt." St. Ann's Hospital v. Arnold (1996),109 Ohio App.3d 562, 565, citing Cincinnati Bd. of Edn. v. Walter
(1979), 58 Ohio St.2d 368, 376. See, also, Whitehurst v. PerryTwp. (1996), 114 Ohio App.3d 729, 735 (noting that the "presumption of constitutionality can be overcome only by a `clear showing of arbitrariness and irrationality'"). Nonetheless, "all laws, including legislation involving workers' compensation, are subject to the limitations imposed by the Equal Protection Clauses of the United States and Ohio Constitutions."Liposchak v. Admr., Ohio Bur. of Workers' Comp. (2000),138 Ohio App.3d 368, 385, quoting State ex rel. Patterson v. Indus.Comm. (1996), 77 Ohio St.3d 201, 204.
 {¶ 6} Pursuant to the Fourteenth Amendment to the United States Constitution, "[n]o State shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; * * * nor deny to any person within its jurisdiction the equal protection of the laws." In like manner, Section 2, Article I, Ohio Constitution, provides that "[a]ll political power is inherent in the people. Government is instituted for their equal protection and benefit, and they have a right to alter, reform, or abolish the same, whenever they may deem it necessary; and no special privileges or immunities shall ever be granted, that may not be altered, revoked, or repealed by the General Assembly." See Am. Assn. of Univ. Professors, Cent.State Univ. Chapter v. Cent. State Univ. (1999),87 Ohio St.3d 55, 60 (confirming that "Ohio's Equal Protection Clause tracks its federal counterpart). "Simply stated, the [equal protection] clause requires that individuals be treated in a manner similar to other in like circumstances." State ex rel. Doersam v. Indus.Comm. (1989), 45 Ohio St.3d 115, 119.
 {¶ 7} R.C. 4123.56(A), the statute at issue, provides:
* * * [I]n the case of temporary disability, an employee shall receive sixty-six and two-thirds per cent of the employee's average weekly wage so long as such disability is total, not to exceed a maximum amount of weekly compensation which is equal to the statewide average weekly wage as defined in division (C) of section 4123.62 of the Revised Code[.] * * *
 {¶ 8} "Workers' compensation legislation can survive constitutional scrutiny under the Equal Protection Clause if the statute at issue is `rationally related to the accomplishment of some state objective at least as important as the purpose contained in the Constitution [Section 35, Article II] and reflected in the statute.'" Liposchak, at 386, quoting Stateex rel. Nyitray v. Indus. Comm. (1983), 2 Ohio St.3d 173, 176. Indeed, the parties agree that a rational basis analysis is appropriate to resolution of this appeal.
 {¶ 9} In employing the rational basis test to determine the constitutionality of R.C. 4123.56(A), we uphold the statutory classification unless it is "wholly irrelevant to achievement of the state's purpose." Menefee v. Queen City Metro (1990),49 Ohio St.3d 27, 29. (Emphasis sic.) Thus, the statute "must be upheld against equal protection challenge if there is any reasonably conceivable state of facts that could provide a rational basis for the classification." Central State Univ., at 58, quoting Fed. Communications Comm. v. Beach Communications,Inc. (1993), 508 U.S. 307, 313, 113 S.Ct. 2096, 2101. As a result, the statute passes constitutional muster unless "the varying treatment of different groups or persons is so unrelated to achievement of any combination of legislative purposes that it can only be concluded that the legislature's actions were irrational." Andolsek v. Kirtland (1994), 99 Ohio App.3d 333,336, quoting Vance v. Bradley (1979), 440 U.S. 93, 97,99 S.Ct. 939, 942.
 {¶ 10} When plausible reasons for the legislature's action are apparent, the statute's constitutionality is validated, and it is constitutionally irrelevant whether the reasoning actually prompted the legislative enactment. United States RR. RetirementBd. v. Fritz (1980), 449 U.S. 166, 179, 101 S.Ct. 453, 461. "Importantly, a state has no obligation whatsoever `to produce evidence to sustain the rationality of a statutory classification.'" Cent. State Univ., at 58, quoting Heller v.Doe (1993), 509 U.S. 312, 320, 113 S.Ct. 2637, 2643. "[A] legislative choice is not subject to courtroom factfinding and may be based on rational speculation unsupported by evidence or empirical data." Id., quoting Beach Communications, at 315.
 {¶ 11} Initially, we question whether R.C. 4123.56(A) creates a distinction or classifications among workers, the prerequisite to plaintiff's equal protection challenge. State ex rel. Riterv. Indus. Comm. (2001) 91 Ohio St.3d 89, 93. Defendants contend the statute treats all workers identically, as "[e]ach and every claim is subject to the `statutory maximum' for the payment of compensation under R.C. 4123.56." (Appellees' Brief, 6.) According to the defendants, the fact that those with higher wages may reach the cap, whereas those earning less may not, does not render the statute unconstitutional. Plaintiff, by contrast, contends "that workers are treated differently depending upon money or income they earned for the year prior to their injury. Simply stated, workers who make more money receive relatively less in workers' compensation benefits than those workers earning a lower weekly wage." (Appellant's Brief, 7.)
 {¶ 12} In Ohio Bur. of Workers' Comp. v. Etheridge (Sept. 16, 1993), Cuyahoga App. No. 63692, the court addressed a similar issue. There, because "it was possible for a worker to be more than one hundred per cent disabled," the defendant appealed from an order that required he repay that portion of permanent partial disability benefits he received in excess of the 100 percent cap on awards. Id., quoting State ex rel. Sears Roebuck Co. v.Indus. Comm. (1999), 52 Ohio St.3d 144, 152. In addressing the issue, the Eighth District noted that "[a]rguably, the operation and ultimate effect of this provision will be that not every claimant will receive the same total percentage of permanent partial disability benefits prior to the invocation of the one hundred percent maximum cut-off period. However, there is no way the state could equalize such benefits. The state has, however, applied the one hundred percent maximum to all claimants. In this respect, plaintiff is treated no differently than any other person attempting to claim the benefits of the statute." (Emphasis sic.) Etheridge, quoting Rose v. Mayfield (1984),20 Ohio App.3d 300, 302.
 {¶ 13} Similarly, we question whether R.C. 4123.56 creates classes of workers through the "wage cap" provision plaintiff challenges. If, however, we assume, without deciding, that the R.C. 4123.56 wage cap created different classes of workers that are treated differently, the issue becomes whether a rational basis exists for the wage cap included in R.C. 4123.56.Etheridge proceeded with a rational basis analysis of the statute at issue in that case and stated that "[t]he state of Ohio has a legitimate interest in maintaining the level of benefits payable to injured workers. The Workers' Compensation Fund is a self-supporting system in that it is funded by employers based upon a percentage of the employer's payroll. To open the state fund to an unlimited amount of permanent partial disability compensation would undermine the actuarial soundness of the system as well as upset the balance between the rights, duties, obligations and benefits of employers and employees." See, also, State ex rel. Justus v. Indus. Comm. (1998),83 Ohio St.3d 364, 366 (noting that "equal protection was not violated by R.C. 4123.68(Y) — a statute which * * * limits the compensation payable to claimants suffering from certain respiratory occupational diseases to total disability and death benefits" despite a greater panoply of benefits being available to other claimants).
 {¶ 14} Although this court has "acknowledge[d] that conserving funds is not a viable basis for denying compensationto those entitled to it," (emphasis sic.) Liposchak, at 387, citing Patterson, at 206, the issue here is not simply conserving workers' compensation funds. Rather, as inLiposchak, it is a matter of directing the funds to those entitled to it. Workers' compensation is "designed to provide sustenance benefits only." Fulton, Ohio Workers' CompensationLaw (2d Ed. 1988), Section 9.3. By including a wage cap in R.C.4123.56, the legislature promoted the same actuarial soundness and balance in the workers' compensation system that Etheridge
cited, while at the same time directing the sustenance-level benefits to those who most need it.
 {¶ 15} As the court explained in Andolsek, "(1) the state has a legitimate interest in maintaining the self-supporting nature of its Workers' Compensation Fund; (2) the state has a legitimate interest in distributing the available resources to the disabilities determined by the state to be covered rather than to cover all disabilities inadequately; and (3) the state has a legitimate interest in maintaining a contribution rate at a level that will not unduly burden participating employers." Id. at 336, quoting Connors v. Sterling Milk Co. (1993),98 Ohio App.3d 711, 715.
 {¶ 16} At least two of those three concerns potentially would be compromised if the cap included in R.C. 4123.56(A) were removed. Even if, as plaintiff contends, premiums could be calculated for higher wage earners in the same way they are calculated for those earning less, and the self-supporting nature of the fund thereby could be maintained under the first prong ofAndolsek, removing the wage cap would undermine the other two factors Andolsek noted. Contrary to the balance the legislature deemed appropriate, higher premiums would require that employers pay the higher contribution rates that would accrue if the wage cap were removed. Moreover, if premiums were held to present levels to maintain that balance, removing the wage cap would leave the system with compensating all disabilities inadequately and paying benefits that exceed sustenance levels.
 {¶ 17} Because a rational basis supports the cap included in R.C. 4123.56(A), plaintiff has failed to prove a violation of his Equal Protection rights. See, also, Rose v. Ohio Dept. of HumanServices (June 22, 1998), Warren App. No. CA97-10-103 (concluding that a cost cap of benefits under the waiver program is rationally related to Ohio's legitimate interest in preserving the cost effectiveness of the waiver program, and thus the cost cap does not violate the Equal Protection guarantees of the Ohio or United States Constitutions).
 {¶ 18} For the foregoing reasons, we overrule plaintiff's single assignment of error, and affirm the judgment of the trial court.
Judgment affirmed.
Bowman and Petree, JJ., concur.