The STATE of Ohio, Appellee,

v.

NIXON, Appellant.

[Cite as *State v. Nixon*, 165 Ohio App.3d 178, 2006-Ohio-72.]

Court of Appeals of Ohio,
Ninth District, Summit County.

No. 22667.

Decided Jan. 11, 2006.

Jana DeLoach, for appellant.

Sherri Bevan Walsh, Summit County Prosecuting Attorney, and Richard S. Kasay, Assistant Prosecuting Attorney, for appellee.

READER, Judge.

{¶ 1} Appellant, Berkley C. Nixon, appeals from the judgment of the Summit County Court of Common Pleas that denied his motion to dismiss. We affirm.

I

{¶ 2} On February 7, 2005, the Summit County Grand Jury indicted Nixon on one count of domestic violence, in violation of R.C. 2919.25(A), a third-degree felony; one count of resisting arrest, in violation of R.C. 2921.33(A), a second-degree misdemeanor; one count of obstructing official business, in violation of R.C. 2921.31(A), a second-degree misdemeanor; and one count of disorderly

conduct, in violation of R.C. 2917.11(A)(1), a fourth-degree misdemeanor. The indictment stemmed from events alleged to have occurred on January 25, 2005 and involved his girlfriend, with whom he resided. Nixon pleaded not guilty to all of the charges.

{¶ 3} On March 30, 2005, Nixon filed a motion to dismiss, indistinctly arguing that R.C. 2903.14, 2909.06, 2909.07, 2911.12, 2911.211, and 2919.22 are unconstitutional as applied to him pursuant to the Marriage Protection Amendment, Section 11, Article XV, Ohio Constitution, enacted in December 2004. The motion did not specifically state which counts in the indictment Nixon moved to dismiss. However, the Ohio Revised Code sections cited in the motion pertained to the domestic-violence count in the indictment.

{¶ 4} Nixon appeared in court the same day. At the hearing, the parties argued their respective positions on the motion to dismiss. Ultimately, Nixon's counsel requested that the "domestic violence law" be held unconstitutional. The court denied Nixon's motion to dismiss on the record. Nixon then withdrew his plea of not guilty on the charges of domestic violence and resisting arrest and entered a no contest plea on each charge. The court found him guilty of both charges and dismissed the remaining charges of obstructing official business and disorderly conduct. The court sentenced Nixon accordingly.

{¶ 5} Subsequently, the trial court issued a judgment entry that denied his motion to dismiss, concluding that the domestic-violence statute, R.C. 2919.25, is constitutional. On April 6, 2005, the court issued a journal entry of conviction and sentence. This appeal followed.

{¶ 6} Nixon timely appealed, asserting one assignment of error for review.

## II

### Assignment of Error

The trial court erred in denying the appellant's motion to dismiss filed due to recent amendment of the Ohio State Constitution, Article XV, Section 11, which mandates that this state and its political subdivisions shall not create or recognize a legal status for relationships of unmarried individuals that intends to approximate the design, qualities, significance or effect of marriage; therefore, making R.C. 2929.25, unconstitutional as applied to the appellant, who was not married to the alleged victim at the time of the alleged assault.

{¶ 7} In his sole assignment of error, Nixon maintains that R.C. 2919.25 is unconstitutional as applied to him, in violation of the Marriage Protection Amendment. Specifically, Nixon argues that the second sentence of the amendment restricts the Ohio Revised Code provisions relating to domestic violence and "demolishes the limited protections previously made available to those unmarried

individuals by the provisions within the Revised Code's Domestic Violence provisions." We disagree.

{¶ 8} A denial of a motion to dismiss is reviewed de novo. *State v. Stallings*, 150 Ohio App.3d 5, 2002-Ohio-5942, 778 N.E.2d 1110, at ¶ 6, citing *State v. Benton* (2000), 136 Ohio App.3d 801, 805, 737 N.E.2d 1046. The constitutionality of a statute is also reviewed de novo. *Medina v. Szwec*, 157 Ohio App.3d 101, 2004-Ohio-2245, 809 N.E.2d 78, at ¶ 4, citing *Liposchak v. Ohio Bur. of Workers' Comp.* (2000), 138 Ohio App.3d 368, 385, 741 N.E.2d 537. However, all statutes enjoy a strong presumption of constitutionality. *Stallings* at ¶ 7, citing *Desenco, Inc. v. Akron* (1999), 84 Ohio St.3d 535, 538, 706 N.E.2d 323. The party challenging the statute's constitutionality bears the burden of proving its constitutional infirmity, and " 'it must appear beyond a reasonable doubt that the legislation and constitutional provisions are clearly incompatible.' " Id., quoting *State ex rel. Dickman v. Defenbacher* (1955), 164 Ohio St. 142, 57 O.O. 134, 128 N.E.2d 59, paragraph one of the syllabus. That is, there must be a "clear conflict" between the constitutional provision and the statute being challenged. Id. at ¶ 7, citing *Xenia v. Schmidt* (1920), 101 Ohio St. 437, 130 N.E. 24, paragraph two of the syllabus.

{¶ 9} The rules of statutory construction apply to the construction of constitutional provisions. *State v. Jackson*, 102 Ohio St.3d 380, 2004-Ohio-3206, 811 N.E.2d 68, at ¶ 14. The rules of construction mandate that we consider the common and ordinary meaning of the terms contained within our constitution in order to interpret them properly. *State ex rel. Lake Cty. Bd. of Commrs. v. Zupancic* (1991), 62 Ohio St.3d 297, 300, 581 N.E.2d 1086. In addition, provisions of a statute or constitutional amendment must be construed in pari materia. See, e.g., *State ex rel. Commt. for Proposed Ordinance to Repeal Ordinance No. 146–02 v. Lakewood*, 100 Ohio St.3d 252, 2003-Ohio-5771, 798 N.E.2d 362, at ¶ 23. However, if the meaning of a provision cannot be ascertained by the plain language therein, we may review the purpose of the provision to determine its meaning. *Jackson* at ¶ 14, citing *Castleberry v. Evatt* (1946), 147 Ohio St. 30, 33 O.O. 197, 67 N.E.2d 861, paragraph one of the syllabus.

{¶ 10} While other trial and appellate courts in Ohio have discussed or determined the constitutional issue Nixon raises in this case, it is of first impression for this court. See, e.g., *State v. Newell*, 5th Dist. No. 2004CA00264, 2005-Ohio-2848, 2005 WL 1364937; *State v. Adams*, 5th Dist. No.2005CA00103, 2005-Ohio-6333, 2005 WL 3196850; *State v. Rodgers*, 131 Ohio Misc.2d 1, 2005-Ohio-1730, 827 N.E.2d 872. The Marriage Protection Amendment states:

> Only a union between one man and one woman may be a marriage valid in or recognized by this state and its political subdivisions. This state and its political subdivisions shall not create or recognize a legal status for relation-

ships of unmarried individuals that intends to approximate the design, qualities, significance or effect of marriage. Section 11, Article XV, Ohio Constitution.

{¶ 11} Nixon maintains that because R.C. 2919.25 "sets forth protections which intend to apply to those in a situation which tends to approximate the design, quality, significance or effect of marriage, [R.C.] 2929.25[sic] is unconstitutional."[1] In this instant case, the trial court concluded that the Marriage Protection Amendment and R.C. 2919.25 "were able to coexist without constitutional violation." The trial court observed that the amendment addresses the legal status of the institution of marriage. For the purposes of bringing charges under the domestic-violence statute, however, the court reasoned that the legal status of marriage is immaterial. The trial court noted in its judgment entry that "[w]ith a domestic violence allegation, it is unnecessary and it is not the Court's intent to approximate the design, qualities, significance or effect of marriage in order to impose the consequences of R.C. 2919.25." We agree. R.C. 2919.25, initially enacted in 1979, provides:

(A) No person shall knowingly cause or attempt to cause physical harm to a family or household member.

(B) No person shall recklessly cause serious physical harm to a family or household member.

(C) No person, by threat of force, shall knowingly cause a family or household member to believe that the offender will cause imminent physical harm to the family or household member.

* * *

(F) As used in this section and sections 2919.251 and 2919.26 of the Revised Code:

(1) "Family or household member" means any of the following:

(a) Any of the following who is residing or has resided with the offender:

(i) A spouse, a person living as a spouse, or a former spouse of the offender;

(ii) A parent or a child of the offender, or another person related by consanguinity or affinity to the offender;

(iii) A parent or a child of a spouse, person living as a spouse, or former spouse of the offender, or another person related by consanguinity or affinity to a spouse, person living as a spouse, or former spouse of the offender.

(b) The natural parent of any child of whom the offender is the other natural parent or is the putative other natural parent.

---

1. We observe that in several places in his brief, Nixon refers to R.C. 2929.25 as being unconstitutional. Because this particular statute section governs misdemeanor community-control sanctions, and not domestic violence, we construe the references to R.C. 2929.25 as a typographical error and assume Nixon meant to refer to R.C. 2919.25.

(2) "Person living as a spouse" means a person who is living or has lived with the offender in a common law marital relationship, who otherwise is cohabiting with the offender, or who otherwise has cohabited with the offender within five years prior to the date of the alleged commission of the act in question.

{¶ 12} The trial court went on to note that for the purposes of the statute, the victim need only be a "family or household member" per R.C. 2919.25(A) through (C) and found that in the instant case the victim was cohabitating with Nixon and was a person living as a spouse at the time of the incident. Nixon does not challenge this finding.

{¶ 13} As the trial court correctly reasoned, the phrase "[p]erson living as a spouse" in R.C. 2919.25(F)(2) is merely "descriptive" of those individuals entitled to protection from criminal activity under the statute and does not serve to create a legal status for relationships of unmarried individuals that approximate marriage. See Section 11, Article XV, Ohio Constitution. It is a phrase that promotes the primary purpose of the domestic violence statute—to hold accountable and punish those who perpetrate the crime proscribed by this statute against related persons as provided by the statute or those cohabitating with the perpetrator as provided in R.C. 2919.25(F)(2), in particular. See *State v. Williams* (1997), 79 Ohio St.3d 459, 462, 683 N.E.2d 1126 (" 'The General Assembly enacted the domestic-violence statutes specifically to criminalize those activities commonly known as domestic violence and to authorize a court to issue protection orders designed to ensure the safety and protection of a complainant in a domestic violence case,' " quoting *Felton v. Felton* (1997), 79 Ohio St.3d 34, 37, 679 N.E.2d 672). Courts have applied R.C. 2919.25 to protect unmarried heterosexual and homosexual persons alike. See *State v. Hadinger* (1991), 61 Ohio App.3d 820, 823, 573 N.E.2d 1191; *State v. Yaden* (1997), 118 Ohio App.3d 410, 418, 692 N.E.2d 1097.

{¶ 14} The purpose of the Marriage Protection Amendment is entirely different. As stated by the Fifth District Ohio Court of Appeals:

[T]he intent of the Defense of Marriage Amendment was to prohibit same sex marriage. The Defense of Marriage Amendment was specifically adopted in response to the decision of the Massachusetts' Supreme Court in *Goodridge v. Department of Public Health* (2003), 440 Mass. 309, 798 N.E.2d 941 that the Massachusetts' law limiting the protections, benefits and obligations of civil marriage to individuals of opposite sexes lacked a rational basis and violated state constitutional equal protection principles. * * * [T]he Defense of Marriage Amendment has no application to criminal statutes in general or the domestic violence statute in particular."

*Adams* at ¶ 23. Thus, it seeks to preclude the creation and recognition of any relationship "approximat[ing] the design, qualities, significance or effect of mar-

riage" between two persons, that would essentially infringe on the significance and effect of the institution of marriage itself. See Section 11, Article XV, Ohio Constitution.

{¶ 15} Furthermore, when construing a constitutional amendment, we are to presume that the enacting body was aware of existing constitutional and statutory provisions and their judicial construction. *State ex rel. Lake Cty. Bd. of Commrs.*, 62 Ohio St.3d at 303, 581 N.E.2d 1086, citing *State ex rel. Engle v. Indus. Comm.* (1944), 142 Ohio St. 425, 432, 27 O.O. 370, 52 N.E.2d 743. The drafters of the Marriage Protection Amendment did not alter domestic-violence law by the amendment's language; nor is such a purpose evidenced by the intent surrounding its drafting.

{¶ 16} Therefore, we find that Nixon failed to meet his burden of establishing unconstitutionality. See *Liposchak*, 138 Ohio App.3d at 385, 741 N.E.2d 537; *State ex rel. Dickman*, 164 Ohio St. 142, 57 O.O. 134, 128 N.E.2d 59, at paragraph one of the syllabus. Consequently, we conclude that the trial court did not err in finding that R.C. 2919.25 is constitutional. Nixon's sole assignment of error is overruled.

### III

{¶ 17} Nixon's sole assignment of error is overruled. The judgment of the Summit County Court of Common Pleas is affirmed.

Judgment affirmed.

CARR, P.J., and REECE, J., concur.

READER, J., retired, of the Fifth District Court of Appeals, sitting by assignment.

REECE, J., retired, of the Ninth District Court of Appeals, sitting by assignment.