OPINION
{¶ 1} On October 4, 1993, John Crigger ("appellant") and Amy Crigger ("appellee" or "deceased") married. Before their marriage, appellant and appellee had a daughter, Heather Nicole Crigger ("Heather"), born September 26, 1993.[1] After they married, the couple had their second child, John Victor Crigger, Jr. ("Johnny"), born on February 25, 1995. On June 9, 1997, less than four years after they married, appellant and appellee divorced. Pursuant to the divorce decree, appellee was designated the residential parent and legal custodian of Johnny. During 1999, appellant and appellee attempted, but failed to reconcile. On March 9, 2001, appellee died as a result of an automobile accident.
 {¶ 2} On June 25, 2001, shortly after appellee's death, her mother, Deborah Beatty ("maternal grandmother"), petitioned the court to enforce her visitation rights with respect to Heather and Johnny. On September 4, 2001, appellant filed a motion to dismiss alleging that, to order a non-parental companionship, would violate his due process rights and not be in the best interest of Heather and Johnny to be forced to visit with their maternal grandmother. On November 7, 2001, the maternal grandmother filed a memorandum contra to appellant's September 4, 2001 motion to dismiss. On that same day, the magistrate ordered temporary visitation to the maternal grandmother, every other weekend.
 {¶ 3} After several visits between the maternal grandmother and the minor children, appellant abruptly stopped the visitation. As a result, the maternal grandmother filed numerous motions for contempt against appellant. In a letter dated November 16, 2001, Guardian ad litem, Patrick Hamilton, indicated that appellant was intentionally failing to comply with the magistrate's recommendations ordering visits between the maternal grandmother and her grandchildren.
 {¶ 4} On December 26, 2001, appellant filed a second motion to dismiss challenging the constitutionality of R.C. 3109.11, specifically arguing that the Ohio statute gives no deference to parents. On February 20, 2002, the maternal grandmother filed a memorandum contra to appellant's motion to dismiss arguing that the Ohio statute does satisfy a parent's due process rights by considering the interest and concerns of that parent in conjunction with the court's determination of visitation with a grandparent. On October 30, 2002, Guardian ad litem Hamilton filed his final argument, where he recommended that the court's November 7, 2001 temporary companionship order be reinstated as a permanent order to include make-up visitation between the maternal grandmother and her grandchildren.
 {¶ 5} In his decision filed March 14, 2003, the magistrate granted the maternal grandmother's June 25, 2001 motion for visitation, overruled appellant's December 26, 2001 motion to dismiss, and found appellant guilty and in contempt of violating court orders regarding temporary visitation. The magistrate also ordered appellant to pay $1,965.50 in Guardian ad litem fees. On March 14, 2003, the trial court adopted the magistrate's decision, finding no error of law or other defect on the face of the magistrate's decision. On March 31, 2003, appellant filed objections to the magistrate's decision, again arguing that R.C. 3109.11
was unconstitutional.
 {¶ 6} On June 25, 2003, the maternal grandmother filed various motions: (1) a motion and memorandum for reappointment of Guardian ad litem Hamilton on behalf of Johnny; (2) a motion and memorandum for psychological examination of the parties; (3) a motion for appellant to be tested for drug abuse; (4) a motion and memorandum and affidavit in support for a restraining order; (5) first request for production of documents and things; (6) first set of interrogatories to appellant; and (7) motion for reallocation of custodial rights and responsibilities. On September 2, 2003, appellant filed a memorandum contra to the maternal grandmother's motion for reallocation of parental rights and responsibilities.
 {¶ 7} On August 7, 2003, a hearing was held on the various motions filed. In an order dated September 15, 2003, the magistrate required appellant and the maternal grandmother to each deposit, within 30 days, $2,500 to the trust account of the Guardian ad litem Hamilton.
 {¶ 8} On August 19, 2003, the magistrate filed an entry ordering, prohibiting, and enjoining appellant from permanently removing Johnny from the jurisdiction of the trial court. On September 29, 2003, appellant filed objections to the September 15, 2003 magistrate's decision ordering him to pay $2,500, arguing that the maternal grandmother should be required to post the entire deposit. On November 10, 2003, the maternal grandmother filed a memorandum contra to appellant's objections.
 {¶ 9} On January 21, 2004, an oral hearing was held on appellant's objections filed on March 31, 2003 and September 29, 2003. The trial court first addressed appellant's September 29 objections regarding the Guardian ad litem fees. The trial court denied appellant's objection finding that appellant was "the primary reason, if not the sole reason, that lengthy litigation ensued." (Decision and Judgment Entry, Feb. 20, 2004, at 1.) The trial court also noted that a 50/50 division of the fees was unfair to the maternal grandmother.
 {¶ 10} The trial court next addressed appellant's objections filed March 31, 2003. In his objections to the magistrate's decision, appellant argued that R.C. 3109.11, which must be read in conjunction with R.C.3109.051(D), was unconstitutional. Appellant, in citing to Troxel v.Granville (2000), 530 U.S. 57, 120 S.Ct. 2054, argued that his fundamental right as a parent to make decisions concerning the care, custody, and control of his children should be given special weight. Appellant agued that the Ohio statute gives no special weight or deference to him as a parent. The trial court disagreed with appellant. The trial court noted that while R.C. 3109.051(D) does not expressly use the terms "special weight" or "deference," did not mean that a court violates appellant's due process rights as required in Troxel. R.C. 3109.051(D) sets forth 16 factors that a court should consider when determining whether to grant parenting time to a parent or visitation time to a grandparent, relative, or other person.
 {¶ 11} The trial court, after reviewing the record, held that the magistrate gave due deference to appellant's wishes and concerns. The trial court denied appellant's March 31, 2003 objections to the magistrate's decision.
 {¶ 12} It is from this February 20, 2004 decision and judgment entry of the Franklin County Court of Common Pleas, Division of Domestic Relations, that appellant appeals, assigning the following sole assignment of error:
The trial court erred in failing to find Ohio revised code section3109.11 unconstitutional on its face.
 {¶ 13} In his sole assignment of error, appellant argues that R.C.3109.11 does not give any special deference to his wishes and concerns as a parent and intrudes on his constitutional rights, thereby being unconstitutional. An appellate court's standard of review, when examining the constitutionality of a statute, is de novo. Liposchak v. Admr., Bur.of Workers' Comp. (2000), 138 Ohio App.3d 368, 385, citing OhioHistorical Soc. v. State Emp. Relations Bd. (1993), 66 Ohio St.3d 466, 471. Upon consideration of this standard of review and the presumption of constitutionality extended to statutes, we independently review the constitutionality of R.C. 3109.11, which provides:
If either the father or mother of an unmarried minor child is deceased, the court of common pleas of the county in which the minor child resides may grant the parents and other relatives of the deceased father or mother reasonable companionship or visitation rights with respect to the minor child during the child's minority if the parent or other relative files a complaint requesting reasonable companionship or visitation rights and if the court determines that the granting of the companionship or visitation rights is in the best interest of the minor child. In determining whether to grant any person reasonable companionship or visitation rights with respect to any child, the court shall consider all relevant factors, including, but not limited to, the factors set forth in division (D) of section 3109.051 of the Revised Code. Divisions (C), (K), and (L) of section 3109.051 of the Revised Code apply to the determination of reasonable companionship or visitation rights under this section and to any order granting any such rights that is issued under this section.
 {¶ 14} This is the first occasion in which this court has addressed whether R.C. 3109.11 provides for the wishes of the parents as well as the best interest of the child. While other Ohio appellate courts have considered this issue, they are split as to whether R.C. 3109.11 is constitutional. The Seventh and Fourth Districts have held the grandparent visitation law unconstitutional. See Oliver v. Feldner,149 Ohio App.3d 114, 126, 2002-Ohio-3209, at ¶ 66 ("It is clear fromTroxel that the `special weight' that must be given to a parent's childrearing decisions has constitutional implications, and to overcome that `special weight,' there must be some showing of compelling reasons and circumstances to disregard that parent's wishes"); and Frazier v.Frazier, Hocking App. No. 02CA8, 2003-0hio-1087, ¶ 27 ("Furthermore, although the `language of the statute' does not elevate any one of the factors above the others, Troxel makes it clear that factor 15 of R.C.3109.051[D], the wishes and concerns of the parent, are to be accorded `special weight'").
 {¶ 15} Conversely, cases cited by the Third, Fifth, Ninth, and Twelfth Districts have concluded that the 16 factors set forth in R.C. 3109.051(D) pass constitutional muster allowing a trial court to fulfill the "special weight" requirement set forth in Troxel along with balancing the best interest of the child. See Spivey v. Keller, Allen App. No. 6-04-09, 2004-0hio-6667, ¶ 14 (R.C. 3109.11 and 3109.051 are sufficiently and narrowly tailored to take into consideration the "special weight" requirement to satisfy the substantive due process rights of Troxel); InRe Talkington, Stark App. No. 2003CA00226, 2004-0hio-4215, ¶ 31 (R.C.3109.51[D] is narrowly tailored to allow a trial court to give the "special weight" to a parent's wishes and concerns); Harrold v. Collier,
Wayne App. No. 03CA0064, 2004-0hio-4331 (R.C. 3109.11 does not violate the dicta of Troxel because the Ohio statute provides for the wishes of the parents to be considered as well as the best interests of the child); Baker v. Baker, Brown App. No. CA2002-04-008, 2003-0hio-731 (the factors enumerated in R.C. 3109.051 satisfy the requirements outlined inTroxel); Epps v. Epps (Aug. 9, 2001), Ashland App. No. 01COA01403 (R.C.3109.051 is more narrowly drawn than the Washington statute and was constitutional); Fischer v. Wright (Nov. 30, 2001), Coshocton App. No. 00-CA-028 (the manner in which R.C. 3109.051 was applied determines whether it unconstitutionally infringed upon a parent's right to make decisions regarding a child's care, custody, and control).
 {¶ 16} In Troxel, Justice O'Connor, in writing for the plurality, held that a Washington statue that permitted any person, regardless of relationship to the child, to petition the court for visitation rights at any time with the only requirement being the best interest of the child, was unconstitutional as applied to the particular facts of the case. Id. at 73. Justice O'Connor determined that the law was unconstitutional as applied because of its "sweeping breadth." Id. In making its determination, the court recognized that parents have a fundamental right to make decisions concerning the care, custody, and control of their children. Id. at 65, citing Meyer v. Nebraska (1923), 262 U.S. 390, 399,43 S.Ct. 625. See, also, Prince v. Massachusetts (1944), 321 U.S. 158, 166,64 S.Ct. 438 ("It is cardinal with us that the custody, care and nurture of the child reside first in the parents, whose primary function and freedom include preparation for obligations the state can neither supply nor hinder"); Stanley v. Illinois (1972), 405 U.S. 645, 651, 92 S.Ct. 1208
("It is plain that the interest of a parent in the companionship, care, custody, and management of his or her children `come(s) to this Court with a momentum for respect lacking when appeal is made to liberties which derive merely from shifting economic arrangements'"); Washingtonv. Glucksberg (1997), 521 U.S. 702, 720, 117 S.Ct. 2258 ("In a long line of cases, we have held that, in addition to the specific freedoms protected by the Bill of Rights, the `liberty' specially protected by the Due Process Clause includes the rights * * * to direct the education and upbringing of one's children"). The Troxel court held that as applied, the lower Washington court did not give "special weight" to the parent's wishes and concerns, which is a due process requirement. Id. at 69-70.
 {¶ 17} When a challenged legislation impinges on a fundamental constitutional right, the general rule is that courts must examine the statute under a strict scrutiny standard, i.e., the statute that challenges the fundamental right is unconstitutional unless it is necessary to promote a compelling governmental interest and is narrowly tailored to achieve that result. See Perry Edn. Assn. v. Perry LocalEducators' Assn. (1983), 460 U.S. 37, 45, 103 S.Ct. 948; Sorrell v.Thevenir (1994), 69 Ohio St.3d 415, 423.
 {¶ 18} R.C. 3109.051(D) requires a trial judge to consider all of the following factors:
(1) The prior interaction and interrelationships of the child with the child's parents, siblings, and other persons related by consanguinity or affinity, and with the person who requested companionship or visitation if that person is not a parent, sibling, or relative of the child;
(2) The geographical location of the residence of each parent and the distance between those residences, and if the person who requested companionship or visitation is not a parent, the geographical location of that person's residence and the distance between that person's residence and the child's residence;
(3) The child's and parents' available time, including, but not limited to, each parent's employment schedule, the child's school schedule, and the child's and the parents' holiday and vacation schedule;
(4) The age of the child;
(5) The child's adjustment to home, school, and community;
(6) If the court has interviewed the child in chambers, pursuant to division (C) of this section, regarding the wishes and concerns of the child as to visitation by the parent who is not the residential parent or companionship or visitation by the grandparent, relative, or other person who requested companionship or visitation, as to a specific visitation schedule, or as to other visitation matters, the wishes and concerns of the child, as expressed to the court;
(7) The health and safety of the child;
(8) The amount of time that will be available for the child to spend with siblings;
(9) The mental and physical health of all parties;
(10) Each parent's willingness to reschedule missed visitation and to facilitate the other parent's visitation rights, and if the person who requested companionship or visitation is not a parent, the willingness of that person to reschedule missed visitation;
(11) In relation to visitation by a parent, whether either parent previously has been convicted of or pleaded guilty to any criminal offense involving any act that resulted in a child being an abused child or a neglected child; whether either parent, in a case in which a child has been adjudicated an abused child or a neglected child, previously has been determined to be the perpetrator of the abusive or neglectful act that is the basis of the adjudication; and whether there is reason to believe that either parent has acted in a manner resulting in a child being an abused child or a neglected child;
(12) In relation to requested companionship or visitation by a person other than a parent, whether the person previously has been convicted of or pleaded guilty to any criminal offense involving any act that resulted in a child being an abused child or a neglected child; whether the person, in a case in which a child has been adjudicated an abused child or a neglected child, previously has been determined to be the perpetrator of the abusive or neglectful act that is the basis of the adjudication; whether either parent previously has been convicted of or pleaded guilty to a violation of section 2919.25 of the Revised Code involving a victim who at the time of the commission of the offense was a member of the family or household that is the subject of the current proceeding; whether either parent previously has been convicted of an offense involving a victim who at the time of the commission of the offense was a member of the family or household that is the subject of the current proceeding and caused physical harm to the victim in the commission of the offense; and whether there is reason to believe that the person has acted in a manner resulting in a child being an abused child or a neglected child;
(13) Whether the residential parent or one of the parents subject to a shared parenting decree has continuously and willfully denied the other parent's right to visitation in accordance with an order of the court;
(14) Whether either parent has established a residence or is planning to establish a residence outside this state;
(15) Any other factor in the best interest of the child.
 {¶ 19} In this case, we find that Ohio law, unlike the Washington statute in Troxel, is more narrowly tailored, as it specifically requires a trial court to review the 16 enumerated factors. Furthermore, R.C.3109.051(D) does afford "special weight" to the parent's decision to decline grandparent visitation and allows the trial court to take into consideration the best interest of the child.
 {¶ 20} In the case sub judice, the trial court, after reviewing the record, concluded that the magistrate accorded special attention and weight to appellant's wishes and concerns. The record is devoid of any evidence to the contrary. The magistrate's decision sets forth specific findings to support the determination that visitation with Heather and Johnny's maternal grandmother would be in their best interest. We are unable to find that the trial court abused its discretion in granting visitation rights to the maternal grandmother.
 {¶ 21} Based on the foregoing, we agree with the Third, Fifth, Ninth and Twelfth Districts in concluding that R.C. 3109.11 and 3109.051 are constitutional. As such, appellant's sole assignment of error lacks merit.
 {¶ 22} For the foregoing reasons, appellant's sole assignment of error is overruled and the judgment of the Franklin County Court of Common Pleas, Division of Domestic Relations, is affirmed.
Judgment affirmed.
Brown, P.J. and Sadler, J., concurs.
[1] Appellee was 16 when she gave birth to Heather. In an agreed entry dated February 23, 1995, appellant's mother, Sharlene Crigger, was designated sole custodian and residential parent of Heather.