OPINION
{¶ 1} Defendant-appellant, Benjamin Locklear, appeals from a judgment of the Franklin County Court of Common Pleas finding him guilty of attempted murder and felonious assault. Because defendant's convictions are supported by the sufficiency and manifest weight of the evidence, and because defendant was properly sentenced, we affirm.
 {¶ 2} On August 1, 2005, defendant was indicted on one count of attempted murder in violation of R.C. 2923.02 as it relates to 2903.02, and one count of felonious assault in violation of R.C.2903.11. According to the state's evidence, Larry Fitch lived with his girlfriend, Brenda Bear, and defendant in an apartment building on North Harris Avenue. On the evening of July 21, 2005, Fitch and defendant were alone in the apartment. After drinking a six-pack of beer, Fitch confronted defendant about some items that were missing from the apartment. A verbal argument ensued which quickly escalated into a physical altercation.
 {¶ 3} According to Fitch, defendant was the aggressor, throwing several punches; Fitch tried to push defendant away. As Fitch attempted to exit the apartment, defendant was directly behind him. Fitch felt several "shocks" to the back of his body, which he later realized were knife penetrations. (Tr. 71.) Fitch eventually exited the apartment where he saw a resident he knew only as Steve standing in the hallway. Steve urged Fitch to sit down because he was bleeding heavily from multiple stab wounds.
 {¶ 4} Jerald Sexton and Patricia Lightle lived in a nearby apartment. They heard some commotion in the hallway and came out of their apartment to investigate. Fitch, defendant, and Steve were in the hallway; Steve was trying to separate defendant and Fitch. Sexton testified he saw defendant place an object behind a door near the stairwell and leave the building. He assumed the object was a knife because Fitch had several stab wounds. Sexton called 9-1-1 while Lightle tended to Fitch.
 {¶ 5} Columbus Police Officers Richard Criner and Mike Shannon arrived at the scene to find Fitch lying in the hallway of the apartment building. Fitch had suffered multiple stab wounds, and a blood trail led from the apartment to where he was lying. Sexton and Lightle provided a description of defendant, who was apprehended a short time later in a nearby building. No weapon was recovered. Medics transported Fitch to a local hospital, where Columbus Police Detective Michael Higgins interviewed him. From a photo array, Fitch identified defendant as his assailant.
 {¶ 6} Higgins interviewed defendant following his arrest. In that interview, defendant asserted that Fitch initiated an argument about Bear and the missing items. The argument soon escalated to a physical fight, during which Fitch threatened defendant with a knife. The fight culminated in defendant punching Fitch once and knocking him to the floor in the hallway outside the apartment. Defendant then left the apartment and walked to a nearby building, where he was later arrested. Defendant denied stabbing Fitch.
 {¶ 7} Contrary to the information defendant provided in his interview with police, Fitch testified that he suffered eight stab wounds during the altercation: "one underneath the arm, one directly on the back, and six on the legs, the back, hind side of my legs." (Tr. 79.) He further testified that he had "a severed lung and severed kidney" and torn muscles. Id. He was in the hospital for almost a week following the incident and returned to "light duty" work a few days after his release from the hospital.
 {¶ 8} Based on the evidence, the jury found defendant guilty on both counts as charged in the indictment. The trial court sentenced defendant to nine years on the attempted murder count and seven years on the felonious assault count and ordered the sentences to be served concurrently.
 {¶ 9} Defendant timely appeals the trial court's judgment, assigning five errors:
First Assignment of Error: The evidence as legally insufficient to support appellant's conviction for attempted murder.
Second Assignment of Error: The court erroneously overruled appellant's motions for acquittal pursuant to Criminal Rule 29.
Third Assignment of Error: Appellant's convictions were against the manifest weight of the evidence.
Fourth Assignment of Error: Attempted murder, as charged in count one of the indictment, and felonious assault, as charged in count two, are allied offenses of similar import committed with a single animus. The court erred by imposing concurrent sentences for the two offenses which it should have directed the prosecutor to elect on which offense conviction would be entered and sentence pronounced.
Fifth Assignment of Error: Imposition of multiple sentences for attempted murder and felonious assault was in violation of the Double Jeopardy Clauses of the state and federal constitutions.
I. First, Second, and Third Assignments of Error
 {¶ 10} Defendant's first, second, and third assignments of error are interrelated and thus will be addressed jointly. Together they challenge (1) the sufficiency of the evidence as to the attempted murder count, asserting the trial court should have granted defendant's Crim.R. 29 motion, and (2) the manifest weight of the evidence as to both the attempted murder and felonious assault counts.
 {¶ 11} "Pursuant to Crim.R. 29(A), a court shall not order an entry of judgment of acquittal where the evidence is such that reasonable minds can reach different conclusions as to whether each material element of a crime has been proved beyond a reasonable doubt." State v. Apanovitch (1987),33 Ohio St.3d 19, 22, quoting State v. Bridgeman (1978), 55 Ohio St.2d 261, syllabus. In ruling on a Crim.R. 29 motion, a trial court must construe the evidence in a light most favorable to the state.State v. Busby (Sept. 14, 1999), Franklin App. No 98AP-1050. The standard of review applied to a denied motion for acquittal pursuant to Crim.R. 29 is virtually identical to that employed in a challenge to the sufficiency of the evidence. State v.Turner, Franklin App. No. 04AP-364, 2004-Ohio-6609, at ¶ 8, appeal not allowed (2005), 106 Ohio St.3d 1547, citing State v.Ready (2001), 143 Ohio App.3d 748, 759.
 {¶ 12} "An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." State v. Jenks (1991), 61 Ohio St.3d 259, paragraph two of the syllabus. "Whether the evidence is legally sufficient to sustain a verdict is a question of law." State v.Thompkins (1997), 78 Ohio St.3d 380, 386.
 {¶ 13} To prove attempted murder, the state must establish beyond a reasonable doubt that defendant "purposely engaged in conduct which, if successful, would have caused [the victim's] death." State v. Osborne (Apr. 8, 1999), Franklin App. No. 98AP-741, citing State v. Kidder (1987), 32 Ohio St.3d 279,283. A person acts purposely when it is his or her specific intention to cause a certain result. See R.C. 2901.22(A); see, also, State v. Edwards (1985), 26 Ohio App.3d 199, 200.
 {¶ 14} In challenging his attempted murder conviction on sufficiency grounds, defendant does not suggest the state failed to prove that he stabbed Fitch eight times with a knife. Rather, defendant contends the state failed to present any evidence from which a jury could reasonably find that in so doing he specifically intended to cause Fitch's death.
 {¶ 15} Defendant correctly notes the state presented no direct evidence that defendant intended to kill Fitch when he attacked him. Purpose or intent, however, may be established by circumstantial evidence. State v. Shue (1994),97 Ohio App.3d 459, 466, appeal not allowed (1995), 71 Ohio St.3d 1476. A jury may infer an intent to kill where (1) the natural and probable consequence of a defendant's act is to produce death, and (2) all of the surrounding circumstances allow the conclusion that a defendant had an intent to kill. Edwards, supra, citing Statev. Robinson (1954), 161 Ohio St. 213. Such circumstances include the means or weapon used, its tendency to destroy life if designed for that purpose, and the manner in which the wounds are inflicted. Robinson, at paragraph five of the syllabus;Busby, supra.
 {¶ 16} Defendant contends the evidence establishing that six of the eight stab wounds were inflicted to the back of Fitch's legs does not provide a sufficient basis from which the jury could reasonably infer that he intended to take Fitch's life. The repeated stabbing of a victim, however, can indicate intent to kill. See, e.g., State v. Tibbetts (2001), 92 Ohio St.3d 146,162; State v. Burke (1995), 73 Ohio St.3d 399, 404. Further, defendant's argument does not take into account the evidence establishing that two of the stab wounds were inflicted to Fitch's torso: one under his right arm and one on the lower right side of his back. Defendant's inflicting a wound directed at Fitch's vital organs can indicate intent to kill. See, e.g.,State v. Clark (1988), 38 Ohio St.3d 252, 256.
 {¶ 17} Defendant further contends no testimony concerning the nature and gravity of those injuries corroborated Fitch's testimony describing his injuries. Defendant does not direct this court to any case law requiring the state to establish purpose to kill through medical or other expert testimony addressing the severity of the victim's injuries. Indeed, this court has held that "[t]he attempt statute * * * does not mandate that the victim sustain any injury from the attempted act of murder. * * * Thus, the intent of the accused, not the result, is the determinative factor." State v. Clay (Mar. 28, 2000), Franklin App. No. 99AP-404, citing State v. Talley (Sept. 25, 1998), Lake App. No. 97-L-169.
 {¶ 18} Further, other evidence established the nature and extent of Fitch's injuries. The state submitted photographs depicting one stab wound under Fitch's right arm, one on the lower right side of his back, and six to his left hamstring and buttocks. The photographs were identified as accurately representing the wounds Fitch suffered, they support Fitch's testimony, and they provide a clear portrait of Fitch's injuries. In addition, both Criner and Shannon testified that when they arrived at the scene, Fitch was nearly unconscious and had lost a significant amount of blood. Indeed, Criner testified that Fitch "didn't look like he was going to make it" (Tr. 34), and Shannon averred that Fitch appeared to be "very close to death, due to the amount of blood he lost and his condition." (Tr. 47.) From such evidence, the jury could reasonably have concluded that the person who inflicted such wounds had a specific intent to kill the victim.
 {¶ 19} Defendant argues in his third assignment of error that both his attempted murder and felonious assault convictions are against the manifest weight of the evidence. In determining whether a verdict is against the manifest weight of the evidence, an appellate court sits as a "thirteenth juror." Thompkins, at 387. Thus, we review the entire record, weigh the evidence and all reasonable inferences, and consider the credibility of witnesses. Id. In addition, we determine "`whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.'" Id., quoting State v. Martin (1983), 20 Ohio App.3d 172, 175. A reviewing court may reverse a conviction on manifest weight grounds for only the most "exceptional case in which the evidence weighs heavily against the conviction." Thompkins, quotingMartin, supra. "Determinations of credibility and weight of the testimony remain within the province of the trier of fact."State v. Kelly, Franklin App. No. 02AP-195, 2002-Ohio-5797, at ¶ 18, appeal not allowed (2003), 100 Ohio St.3d 1433, citingState v. DeHass (1967), 10 Ohio St.2d 230, paragraph one of the syllabus.
 {¶ 20} Defendant argues that his convictions are against the manifest weight of the evidence because Fitch's testimony is not credible. Defendant first notes Fitch's assertion regarding the impetus for the fight which led to the stabbing: Fitch confronted defendant about the allegedly missing items. Defendant contends the stated premise is not believable because it conflicts with Sexton's testimony that he understood the altercation to have stemmed from Fitch's use of a racial slur.
 {¶ 21} Fitch's testimony may be credible even though it conflicts with Sexton's testimony. Indeed, the jury could find Sexton's assertion not to be particularly credit-worthy, given that Sexton was not present when the fight began, he testified only that he "guess[ed] it was a racial remark," and Fitch denied using a racial epithet. (Tr. 116.) Further, even if the jury chose to believe the testimony of Sexton over that of Fitch regarding the impetus for the altercation, the jury still could have believed Fitch's testimony that defendant stabbed him multiple times during the course of the fight. A jury, as finder of fact, is free to believe all, part, or none of the testimony of the witnesses who appear before it. State v. Wiley, Franklin App. No. 03AP-340, 2004-Ohio-1008, at ¶ 48, appeal not allowed,102 Ohio St.3d 1533, citing State v. Burke, Franklin App. No. 02AP-1238, 2003-Ohio-2889, at ¶ 15.
 {¶ 22} Defendant further also contends Fitch's customary alcohol consumption, a 12-pack of beer in a single night, also should be considered in considering the manifest weight of the evidence. While Fitch candidly admits his typical 12-pack of beer in a single night sometimes leads to alcohol-related blackouts, he testified he drank only a six-pack of beer prior to the altercation with defendant. He further stated he did not believe his perception of the incident would have been different even if he had consumed eight beers. Fitch attributed his inability to recall exactly what transpired between the time the medics transported him to the hospital and when Huggins questioned him to the loss of blood from the stab wounds rather than to his alcohol consumption. Supporting Fitch's explanation, Huggins testified that during the interview at the hospital, Fitch smelled of alcohol but had no problem relating the events of the evening.
 {¶ 23} Accordingly, defendant's convictions for felonious assault and attempted murder are not against the manifest weight of the evidence. Having also concluded sufficient evidence supports defendant's conviction for attempted murder, we overrule defendant's first, second, and third assignments of error.
II. Fourth and Fifth Assignments of Error
 {¶ 24} Defendant's fourth and fifth assignments of error are interrelated and will be considered together. Defendant contends the trial court violated his constitutional protection against double jeopardy and his statutory rights under R.C. 2941.25 when it sentenced defendant to concurrent prison terms for attempted murder and felonious assault. Defendant argues that because on "the facts of this case," both crimes involved the same criminal conduct, defendant should have been sentenced on only one of the offenses.
 {¶ 25} Preliminarily, because defendant failed to object in the trial court, he waived any error. Absent objection, defendant must demonstrate plain error to warrant reversal. State v. Lee
(Dec. 18, 2001), Franklin App. No. 01AP-16, appeal not allowed (2002), 95 Ohio St.3d 1436, citing State v. Moss (Dec. 28, 1999), Franklin App. No. 99AP-30. See, also, Crim.R. 52(B). Even if a forfeited error satisfies the requirements of Crim.R. 52(B), "Crim.R. 52(B) does not demand that an appellate court correct it. Crim.R. 52(B) states only that a reviewing court `may' notice plain forfeited errors; a court is not obliged to correct them. We have acknowledged the discretionary aspect of Crim.R. 52(B) by admonishing courts to notice plain error `with the utmost caution, under exceptional circumstances and only to prevent a manifest miscarriage of justice.'" State v. Barnes (2002),94 Ohio St.3d 21, 27, quoting State v. Long (1978),53 Ohio St.2d 91, paragraph three of the syllabus.
 {¶ 26} In State v. Hall, Franklin App. No. 05AP-957,2006-Ohio-2742, this court recently addressed the interplay between state and federal constitutional protections against double jeopardy and Ohio's multi-count statute, R.C. 2941.25. There, we noted that "[t]he federal and state constitutions' double jeopardy protection guards citizens against cumulative punishments for the `same offense.'" Id. at ¶ 16, citing Statev. Moss (1982), 69 Ohio St.2d 515, 518.
 {¶ 27} "Despite such constitutional protection, a state legislature may impose cumulative punishments for crimes that constitute the `same offense' without violating double jeopardy protections." Hall, at ¶ 16, citing State v. Rance (1999),85 Ohio St.3d 632, 635, citing Albernaz v. United States (1981),450 U.S. 333, 344. "Under the `cumulative punishment' prong, double jeopardy protections do `no more than prevent the sentencing court from prescribing greater punishment than the legislature intended.'" Hall, at ¶ 16, quoting Missouri v.Hunter (1983), 459 U.S. 359, 366. "When a legislature signals its intent to either prohibit or permit cumulative punishments for conduct that may qualify as two crimes, the legislature's expressed intent is dispositive." Hall, at ¶ 16, citingRance, at 635. "Therefore, when determining the constitutionality of imposing multiple punishments against a criminal defendant in one criminal proceeding for criminal activity emanating from one transaction, appellate courts are limited to assuring that the trial court did not exceed the sentencing authority the legislature granted to the judiciary."Hall, at ¶ 16, citing Moss, at 518, citing Brown v. Ohio
(1977), 432 U.S. 161.
 {¶ 28} In Ohio, the trial court's authority to impose multiple punishments for conduct that constitutes both attempted murder and felonious assault is contained in R.C. 2941.25, which provides:
(A) Where the same conduct by defendant can be construed to constitute two or more allied offenses of similar import, the indictment or information may contain counts for all such offenses, but the defendant may be convicted of only one.
(B) Where the defendant's conduct constitutes two or more offenses of dissimilar import, or where his conduct results in two or more offenses of the same or similar kind committed separately or with a separate animus as to each, the indictment or information may contain counts for all such offenses, and the defendant may be convicted of all of them.
 {¶ 29} "Under an R.C. 2941.25(A) analysis, the statutorily defined elements of offenses that are claimed to be of similar import are compared in the abstract * * *." (Emphasis added.)Rance, at paragraph one of the syllabus. In determining whether the elements of the crimes are of similar import, "[c]ourts should assess, by aligning the elements of each crime in the abstract, whether the statutory elements of the crimes correspond to such a degree that the commission of one crime will result in the commission of the other." Id. at 638. "If the elements do not so correspond, the offenses are of dissimilar import and the court's inquiry ends: the multiple convictions are permitted."Hall, at ¶ 17, citing Rance, at 636.
 {¶ 30} Pursuant to that analysis, "attempted murder and felonious assault `do not merge for the purposes of sentencing under R.C. 2941.25 because a comparison of their respective elements reveals that they are not offenses of similar import.'"Hall, at ¶ 18, quoting State v. Waddell (Aug. 15, 2000), Franklin App. No. 99AP-1130. "Each offense requires proof of at least one element that the other does not." Hall, at ¶ 18, quoting Waddell.
 {¶ 31} As did the defendant in Waddell, defendant here relies upon State v. Jones (Oct. 22, 1998), Franklin App. No. 98AP-129 in support of his argument. As we noted in Waddell,
"Jones was decided prior to the Ohio Supreme Court's decision in Rance. Under Rance, a finding that attempted murder and felonious assault are allied offenses of similar import would clearly have been improper." Id. Defendant's sentence does not violate R.C. 2941.25 or the double jeopardy clauses of the state or federal constitutions. Accordingly, defendant's fourth and fifth assignments of error are overruled.
 {¶ 32} Having overruled defendant's five assignments of error, we affirm the judgment of the Franklin County Court of Common Pleas.
Judgment affirmed.
French and McGrath, JJ., concur.