{¶ 1} Defendant-appellant, Jakeena Brown, appeals her conviction on two counts of aggravated assault and one count of domestic violence. For the reasons that follow, we affirm in part, and reverse and remand in part.
 {¶ 2} Appellant was indicted by a Cuyahoga County Grand Jury on two counts of felonious assault, counts one and two of the indictment. Count one charged appellant with knowingly causing serious physical harm to the victim, Kevin Johnson. Count two charged appellant with knowingly causing or attempting to cause physical harm to Johnson by means of a deadly weapon or dangerous ordnance, to-wit: a knife. Both felonious assault charges were second-degree felonies. The third and final count of the indictment charged appellant with domestic violence against Johnson, a misdemeanor of the first degree.
 {¶ 3} The case proceeded to a jury trial. At the conclusion of the State's case-in-chief, the defense made a Crim.R. 29 motion for acquittal as to all three counts. The motion was denied. Appellant presented evidence on her behalf; she testified, and called her son and the investigating detective, Earl Brown. At the conclusion of her case-in-chief, appellant renewed her Crim.R. 29 motion; the motion was again denied.
 {¶ 4} The jury found appellant guilty of two counts of fourth-degree aggravated assault, inferior offenses of felonious assault, and domestic violence, as indicted. Appellant was sentenced to two years of community control sanctions.
 {¶ 5} At trial, Officer David DiMaria ("DiMaria") testified that he and his partner, Officer Richard Rusnak ("Rusnak"), responded to Greenwich Avenue in Cleveland after receiving a dispatch for an assault of a female. DiMaria described seeing the victim, Johnson, flag down the officers as they approached Greenwich Avenue. As the officers got closer to Johnson, DiMaria observed that Johnson was bleeding and holding his side. Rusnak called for medical assistance while DiMaria inquired of Johnson, whom he described as "injured" and "excited," what happened. Johnson told Officer DiMaria that his girlfriend had stabbed him. As Johnson explained to the officer what had happened to him, he pointed up the street to a red Blazer and indicated that his girlfriend was in the vehicle. DiMaria testified that he observed a "one-inch slit" in Johnson's abdomen, and that Johnson had lost a lot of blood.
 {¶ 6} While the officers were administering assistance to Johnson, the driver of the red Blazer, later identified as appellant, drove to the area where Johnson and the police were. Appellant exited the vehicle and told the officers that she had called them because Johnson had damaged her truck. Both officers described appellant as being angry over the situation. DiMaria testified that appellant told him that Johnson broke the window to her truck, damaged the bumper and allowed a dog to destroy her temporary license plates. Appellant told the officer that, angry about Johnson's actions, she "cut him." Appellant never told the officer that she accidentally injured Johnson. When questioned as to what she cut him with, appellant told DiMaria that she used a knife. She told DiMaria that the knife was located in the Blazer.
 {¶ 7} Johnson was transported by ambulance from the scene to the hospital, where he was treated for his wound and admitted overnight for observation and pain control. His medical records were admitted into evidence at trial.
 {¶ 8} The officers were unable to locate the knife in the Blazer, but found a knife with blood on it lying in the street in the area where the Blazer was originally parked when the officers arrived on the scene. DiMaria described the knife as a steak knife. The knife was admitted into evidence at trial.
 {¶ 9} The investigation into the incident revealed that appellant and Johnson, girlfriend and boyfriend, were living together at the time of the incident, but experiencing "relationship difficulties." In particular, on the day of the offense, the two had been arguing about Johnson's employment status.
 {¶ 10} At trial, appellant admitted to fighting with Johnson, but characterized the stabbing as an accident. Appellant testified that earlier in the day, while she and Johnson had been arguing, Johnson angrily removed her temporary license plates from her Blazer and left the home they shared together. Appellant testified that she received a phone call from her cousin, who resided on Greenwich Avenue, informing her that the temporary plates were at her home. Appellant explained that in order to drive to her cousin's house, she put a set of old license plates on her Blazer. Appellant testified that she used a knife to put the plates on her vehicle, because she did not have a screwdriver. Unbeknownst to appellant, Johnson was at her cousin's house.
 {¶ 11} When appellant arrived at her cousin's house, she and Johnson resumed arguing. Appellant testified that she reached into her pocket and took the knife out, and that Johnson, upon seeing the knife, "ran up on" her and got stabbed. Appellant explained that she had her eyes closed and was not even aware that Johnson had been stabbed until the police informed her. Appellant testified that after her encounter with Johnson, she drove around the block, summoned someone to call the police, and then parked her vehicle down the street and awaited their arrival. She explained that she was scared for her life and for the safety of her children, who were in the vicinity.
 {¶ 12} Appellant denied that she told Officer DiMaria that she "cut" Johnson. She testified that the police repeatedly asked her how deep she had cut Johnson, and she repeatedly told them that she did not know what had happened. Similarly, appellant denied telling the police that they could find the knife in her vehicle.
 {¶ 13} After finishing their investigation at the scene, the police went to the hospital to obtain a formal statement from Johnson. Johnson admitted he fought with appellant and damaged her car and expressed remorse for his actions. He maintained, however, that appellant had stabbed him.
 {¶ 14} In her first assignment of error, appellant contends that the trial court erred by allowing inadmissible testimonial statements of Johnson to be admitted through DiMaria's testimony. Specifically, appellant contends that the statements violated the United States Supreme Court's holding in Crawford v. Washington (2004), 541 U.S. 36,124 S.Ct. 1354.
 {¶ 15} Initially, we note that defense counsel did not object to the officer's testimony about Johnson's statements and, thus, pursuant to Crim.R. 52, has waived all but plain error. Plain error is an error or defect affecting a substantial right. Crim R. 52(B). As will be explained below, the trial court did not err by allowing the officer's testimony as to Johnson's statements.
 {¶ 16} The Confrontation Clause of the Sixth Amendment provides: "[i]n all criminal prosecutions, the accused shall enjoy the right * * * to be confronted with the witnesses against him." In Crawford, supra, the United States Supreme Court held that "testimonial" hearsay statements may only be admitted where the witness is unavailable and where there was a prior opportunity to cross-examine the witness. Id. at 68-69. Although the Court did not set forth a comprehensive definition of "testimonial," it did provide examples of the types of statements that belong to the "core class" of testimonial statements: "extrajudicial statements * * * contained in formalized testimonial materials, such as affidavits, depositions, prior testimony, or confessions[;]" "statements that were made under circumstances which would lead an objective witness reasonably to believe that the statements would be available for use at a later trial[;]" and "statements taken by police officers in the course of interrogations." Id. at 51-52. (Citations omitted.)
 {¶ 17} The Ninth District Court of Appeals recently addressed the distinction between testimonial and nontestimonial statements inAkron v. Hutton, Summit App. No. C.A. 22424, 2005-Ohio-3300. In that case, the trial court allowed the admission of statements made to the police by the defendant's wife, the victim in the case who was unavailable for trial. The court, in distinguishing Crawford, relied onFowler v. Indiana (2004), 809 N.E.2d 960, wherein an Indiana court of appeals held that nontestimonial out-of-court statements may be admitted without the defendant having an opportunity to cross-examine the witness if the statements fall within a hearsay exception, such as an excited utterance. In Fowler, the police questioned the victim of a domestic violence incident at the scene, but the victim refused to testify at trial; the victim's statements were admitted at trial through an officer's testimony. The Fowler court held that the victim's statements were nontestimonial excited utterances, subject to exception from the hearsay rule.
 {¶ 18} On appeal, the Supreme Court of Indiana agreed with the court of appeals that responses to initial inquiries at a crime scene are typically not testimonial. Hammon v. Indiana (2005), 829 N.E.2d 444,453. The court, however, disagreed with the court of appeals' holding that a statement that qualifies as an excited utterance is necessarily nontestimonial. Id. In disagreeing with the court of appeals on this issue, the Supreme Court of Indiana held that whether a statement from a declarant to a police officer is testimonial depends upon the intent of the declarant in making the statement and the purpose for which the police officer elicited the statement. Id. at 457. If the declarant is making a statement to the police with the intent that his or her statement will be used against the defendant at trial, the statement is testimonial. Likewise, if the police officer elicits the statement in order to obtain evidence in anticipation of a potential criminal prosecution, the statement is testimonial. Id.
 {¶ 19} On appeal, the United States Supreme Court held as follows:
 {¶ 20} "Statements are nontestimonial when made in the course of police interrogation under circumstances objectively indicating that the primary purpose of the interrogation is to enable police assistance to meet an ongoing emergency. They are testimonial when the circumstances objectively indicate that there is no such ongoing emergency, and that the primary purpose of the interrogation is to establish or prove past events potentially relevant to later criminal prosecution." Davis v.Washington (2006), 126 S.Ct. 2266, 2273-2274.
 {¶ 21} Here, Johnson's on-the-scene statement to DiMaria and the officer's questions to Johnson were to meet an ongoing emergency. The initial call to which the police were responding was for an assault on a female. Upon approaching the area to which they were dispatched, however, the police officers were flagged down by Johnson. The officers immediately noticed the amount of blood on Johnson's shirt and went to his aid. The officer's questions, and Johnson's responses thereto, indicated that the primary purpose of the interrogation was to enable the police to assist Johnson in an ongoing emergency, not to establish or prove events potentially relevant to criminal prosecution. Therefore, these statements were nontestimonial and appropriately admitted.
 {¶ 22} The statement taken from Johnson at the hospital, however, was testimonial and should not have been admitted. That notwithstanding, we find its admission harmless; it was not inconsistent with appellant's testimony that she and Johnson had fought, Johnson had damaged her vehicle, and she had stabbed Johnson. Appellant maintained that the stabbing was accidental. There was no testimony of Johnson's opinion of whether appellant accidentally or purposefully stabbed him.
 {¶ 23} Accordingly, appellant's first assignment of error is overruled.
 {¶ 24} In her second, third and fourth assignments of error, appellant challenges the sufficiency of the evidence. A Crim.R. 29 motion challenges the legal sufficiency of the evidence. When a defendant challenges the sufficiency of the evidence, he or she is arguing that the State presented inadequate evidence on each element of the offense to sustain the verdict as a matter of law. State v. Hawn (2000),138 Ohio App.3d 449, 471, 741 N.E.2d 594.
 {¶ 25} "An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." State v. Jenks (1991),61 Ohio St.3d 259, 574 N.E.2d 492, at paragraph two of the syllabus.
 {¶ 26} In her second assignment of error, appellant contends that there was insufficient evidence to support a finding that Johnson suffered serious physical harm. In her third assignment of error, appellant contends that there was insufficient evidence that she possessed a deadly weapon.
 {¶ 27} R.C. 2903.12, governing aggravated assault, provides as follows:
 {¶ 28} "(A) No person, while under the influence of sudden passion or in a sudden fit of rage, either of which is brought on by serious provocation occasioned by the victim that is reasonably sufficient to incite the person into using deadly force, shall knowingly:
 {¶ 29} "(1) Cause serious physical harm to another or to another's unborn;
 {¶ 30} "(2) Cause or attempt to cause physical harm to another or to another's unborn by means of a deadly weapon or dangerous ordnance, as defined in section 2923.11 of the Revised Code."
 {¶ 31} R.C. 2901.01(5) defines serious physical harm to persons as any of the following:
 {¶ 32} "(a) Any mental illness or condition of such gravity as would normally require hospitalization or prolonged psychiatric treatment;
 {¶ 33} "(b) Any physical harm that carries a substantial risk of death;
 {¶ 34} "(c) Any physical harm that involves some permanent incapacity, whether partial or total, or that involves some temporary, substantial incapacity;
 {¶ 35} "(d) Any physical harm that involves some permanent disfigurement or that involves some temporary, serious disfigurement;
 {¶ 36} "(e) Any physical harm that involves acute pain of such duration as to result in substantial suffering or that involves any degree of prolonged or intractable pain."
 {¶ 37} Appellant argues that Johnson's wound did not constitute serious physical harm because, aside from the officers seeing blood and a one-inch slit, "no other description of the harm caused [Johnson] was given." Appellant also argues that Johnson's medical records, which were admitted into evidence, "do very little to shed light on the severity of the injury[,]" and "[t]hus, a reasonable person would not find beyond a reasonable doubt that the injury was 'of such gravity as would normally require hospitalization.'" We disagree.
 {¶ 38} The officers observed Johnson bleeding profusely and immediately acted to obtain medical treatment for him. Officer DiMaria described the wound as
an one-inch slit in Johnson's stomach. Further, Johnson was
hospitalized for his injury. While hospitalized, Johnson's wound was treated and observed.
 {¶ 39} This court has held that "'[g]enerally, a trial court does not err in finding serious physical harm where the evidence demonstrates the victim sustained injuries necessitating medical treatment.'" State v.Scott, Cuyahoga App. No. 81235, 2003-Ohio-5374, quoting State v.Davis, Cuyahoga App. No. 81170, 2002-Ohio-7068.
 {¶ 40} We find that there was sufficient evidence in this case that Johnson's injury constituted serious physical harm. Appellant's second assignment of error is overruled.
 {¶ 41} R.C. 2923.11(A) defines a deadly weapon as follows: "any instrument, device, or thing capable of inflicting death, and designed or specially adapted for use as a weapon, or possessed, carried, or used as a weapon." The Committee Comment to R.C. 2923.11(A) specifically mentions a knife as an example of a deadly weapon.
 {¶ 42} Appellant's injuries were caused by a steak knife. Ohio courts, including this court, have held that a steak knife can constitute a deadly weapon. See, for example, State v. Burrows (Feb. 11, 1988), Cuyahoga App. No. 54153; In re J.R., Medina App. No. 04CA0066,2005-Ohio-4090; State v. Knecht (Dec. 16, 1983), Portage App. No. 1306.
 {¶ 43} Accordingly, appellant's third assignment of error is overruled.
 {¶ 44} In her fourth assignment of error, appellant challenges the sufficiency of the evidence as it relates to the domestic violence charge. In particular, appellant argues that the domestic violence statute, contained in R.C. 2919.25, violates the State's Constitution because it grants a legal status to unmarried persons living as spouses. This issue has already been decided by this court.
 {¶ 45} The issue of the constitutionality of R.C. 2919.25 came about as a result of the November 2004 approval of the Ohio constitutional amendment known as Issue 1. Issue 1 amended the Ohio Constitution by defining marriage as follows:
 {¶ 46} "Only a union between one man and one woman may be a marriage valid in or recognized by this state and its political subdivisions. This state and its political subdivisions shall not create or recognize a legal status for relationships of unmarried individuals that intends to approximate the design, qualities, significance or effect of marriage." Section 11, Article XV, Ohio Constitution.
 {¶ 47} In State v. Burk, 164 Ohio App.3d 740, 2005-Ohio-6727,843 N.E.2d 1254, this court found that Ohio's domestic violence statute is neither incompatible with, nor unconstitutional in light of, Issue 1. See, also, Cleveland v. Voies, Cuyahoga App. No. 86317, 2006-Ohio-815;State v. Douglas, Cuyahoga App. Nos. 86567 86568, 2006-Ohio-2343. Further, the Fifth, Seventh, Ninth and Twelfth Appellate Districts have also addressed this issue and found R.C. 2919.25 constitutional in light of Issue 1. See State v. Newell, Stark App. No. 2004CA00264,2005-Ohio-2848; State v. Rexroad, Columbiana App. Nos. 05 CO 36, 05 CO 52, 2005-Ohio-6790; State v. Nixon, 165 Ohio App. 3d 178, 2006-Ohio-72,845 N.E.2d 544; State v. Carswell, Warren App. No. CA2005-04-047,2005-Ohio-6547. But, see, State v. Ward, Greene App. No. 2005-CA-75,2006-Ohio-1407, wherein the Second Appellate District reached the opposite conclusion. The issue is presently pending in the Supreme Court of Ohio, and unless and until this court is reversed by the Supreme Court, we follow our precedent.
 {¶ 48} Accordingly, appellant's fourth assignment of error is overruled.
 {¶ 49} In her fifth assignment of error, appellant contends that her two convictions for aggravated assault are allied offenses of similar import and should have been merged into a single count. As there was no objection to the convictions at the trial court level, appellant has waived all but plain error. Pursuant to Crim.R. 52(B), as previously mentioned, plain error is an error or defect affecting a substantial right. See, also, State v. Long (1978), 53 Ohio St.2d 91,372 N.E.2d 804,
 {¶ 50} Although both appellant and the State have briefed the issue of the conviction on two counts of aggravated assault as implicating an analysis of whether the offenses are allied offenses, we find that such an analysis is not implicated. An allied offenses analysis is implicated only in a situation where the conduct by a defendant could be construed to constitute two or more offenses. See R.C. 2941.25.
 {¶ 51} Here, however, appellant committed only one act of aggravated assault. The indictment contained two separate counts of aggravated assault, each alleging a different means or method, but both referring to a single act. Count one charged appellant with knowingly causing serious physical harm to Johnson, and count two charged appellant with knowingly causing or attempting to cause physical harm to Johnson by means of a deadly weapon or ordnance. There was only one aggravated assault committed. As such, appellant's conviction on both counts of aggravated assault was improper and in violation of double jeopardy safeguards. Accordingly, we reverse and remand, and direct the trial court to vacate both the finding of guilt and the sentence in one of the aggravated assault convictions.
 {¶ 52} Appellant's fifth assignment of error is sustained.
 {¶ 53} In her sixth assignment of error, appellant argues that she was denied the effective assistance of counsel.
 {¶ 54} In order to demonstrate a claim of ineffective assistance of counsel, appellant must show that her counsel deprived her of a fair trial. In particular, appellant must show that: (1) defense counsel's performance at trial was seriously flawed and deficient; and (2) the result of the trial would have been different if defense counsel had provided proper representation at trial. Strickland v.Washington (1984), 466 U.S. 668; State v. Brooks (1986),25 Ohio St.3d 144.
 {¶ 55} A presumption that a properly licensed attorney executes his or her duty in an ethical and competent manner must be applied to any evaluation of a claim of ineffective assistance of counsel. State v.Smith (1985), 17 Ohio St. 3d 98; Vaughn v. Maxwell (1965),2 Ohio St. 2d 299. In addition, this court must accord deference to defense counsel's strategic choices during trial and cannot examine the strategic choices of counsel through hindsight. Strickland, supra at 689.
 {¶ 56} As her first ground for her claim of ineffective assistance of counsel, appellant cites the fact that her counsel did not object to Johnson's on-the-scene statements to the police.[1] As we already discussed, the statements Johnson made to the police were made in the course of police interrogation under circumstances objectively indicating that the primary purpose of the interrogation was to enable police assistance to meet an ongoing emergency and, thus, were not testimonial. The statements were properly admitted, and defense counsel was not ineffective by not objecting to them.
 {¶ 57} Appellant's next claim of ineffective assistance of counsel is that her counsel failed to object to the convictions on the two counts of aggravated assault as being allied offenses. Because we are directing the trial court to vacate one of the aggravated assault convictions, this contention is moot.
 {¶ 58} Appellant next contends that her counsel was ineffective by not challenging the sufficiency of the evidence relative to the domestic violence charge.[2] Again, as already mentioned, this court has ruled on the issue of the constitutionality of Ohio's domestic violence statue, and found it to be constitutional. Counsel, therefore, was not ineffective by not challenging the statute.
 {¶ 59} As her final claim of ineffective assistance of counsel, appellant cites her counsel's failure to object to a remark made by the assistant prosecuting attorney in her opening statement. Specifically, the assistant prosecuting attorney remarked that Johnson "doesn't want to be here[,]" and the jury would hear his statements through the police. As previously discussed, Officer DiMaria's testimony about Johnson's on-the-scene statements was permissible; his unobjected to testimony about Johnson's statements at the hospital did not constitute plain error. Moreover, the assistant prosecuting attorney's statements would have been prejudicial, if at all, to the State, which had to prosecute its case without its victim. Appellant's contention of ineffective assistance based upon that remark is therefore without merit.
 {¶ 60} Based upon the above discussion, appellant's sixth assignment of error is overruled.
 {¶ 61} In her seventh and final assignment of error, appellant argues that her convictions were against the manifest weight of the evidence. We disagree.
 {¶ 62} State v. Martin (1983), 20 Ohio App. 3d 172, 485 N.E.2d 717, set forth the following test to determine whether a conviction is against the manifest weight:
 {¶ 63} "The court, reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed * * *." Id. at 175.
 {¶ 64} The Supreme Court of Ohio recognized the test in State v.Thompkins (1997), 78 Ohio St. 3d 380, 678 N.E.2d 541, wherein it stated:
 {¶ 65} "* * * Weight of the evidence concerns 'the inclination of the greater amount of credible evidence, offered in a trial, to support one side of the issue rather than the other. It indicates clearly to the jury that the party having the burden of proof will be entitled to their verdict, if, on weighing the evidence in their minds, they shall find the greater amount of credible evidence sustains the issue which is to be established before them.'" Id. at 387, quoting Black's Law Dictionary (6 Ed.1990) at 1594.
 {¶ 66} In this assignment of error, appellant maintains that the State failed to prove that she acted "knowingly," an element required for a conviction on all three counts. We disagree.
 {¶ 67} DiMaria described seeing Johnson flag down the police vehicle as the police responded to a call of an assault of a female. DiMaria observed that Johnson was bleeding and holding his side. Rusnak called for assistance while DiMaria inquired of Johnson as to his apparent injury. Johnson, who Officer DiMaria described as "injured" and "excited," stated that his girlfriend had stabbed him. As Johnson explained to DiMaria what had happened to him, he pointed up the street to a red Blazer and indicated that his girlfriend, appellant, was in the vehicle. DiMaria testified that he observed a "one-inch slit" on Johnson's abdomen, and that Johnson had lost a lot of blood.
 {¶ 68} While the officers were administering assistance to Johnson, appellant drove her red Blazer to the area where Johnson and the police were. Appellant exited the vehicle, and angrily told the officers that she had called them because Johnson had damaged her truck. DiMaria testified that appellant told him that Johnson had broken the window to her truck, damaged the bumper and allowed a dog to destroy her temporary license plates. Appellant told the officer that, angry about Johnson's actions, she "cut" him. Appellant never told the police that she accidentally injured Johnson. When questioned as to what she cut him with, appellant told DiMaria that she used a knife and that it was located in her Blazer. Although the knife was not recovered from the Blazer, it was found in the area where the Blazer was parked when the officers initially arrived on the scene.
 {¶ 69} Appellant's recount of the events differs, however. According to appellant, she had the knife because she had used it to put license plates on her vehicle, because she did not have a screwdriver. She claimed that when she received the call from her cousin informing her that the plates were at her house, she did not know that Johnson was at her cousin's house. Nonetheless, appellant admitted that upon arriving at her cousin's house, she and Johnson resumed arguing. According to appellant, she reached into her pocket and took out the knife, and Johnson, upon seeing the knife, "ran up on" her and got stabbed. Appellant testified that as Johnson "ran up" on her, she had her eyes closed and was not even aware that he had been stabbed until the police informed her.
 {¶ 70} Appellant denied that she told the police that she "cut" Johnson. She testified that the police repeatedly asked her how deep she had cut Johnson, and she repeatedly told them that she did not know what had happened. Similarly, appellant denied telling the police that they could find the knife in her vehicle.
 {¶ 71} Appellant essentially argues that her recitation of the events is more credible than the officer's testimony. Deference, however, must be given to the determinations of the finders of fact, as they are in the best position to observe the witnesses and their demeanor. State v.Antill (1964), 176 Ohio St. 61. To that end, only where the finders of fact "clearly lost [their] way and created such a manifest miscarriage of justice" will we reverse the conviction and grant a new trial.Thompkins, supra at 387.
 {¶ 72} Upon review of the record, we cannot find that the jury clearly lost its way so as to create a manifest miscarriage of justice. We therefore overrule appellant's seventh assignment of error.
Judgment affirmed in part, reversed in part, and remanded to the lower court for further proceedings consistent with this opinion.
It is ordered that appellee and appellant equally share the costs herein taxed.
The court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution. The defendant's conviction having been affirmed, any bail pending appeal is terminated. Case remanded to the trial court for execution of sentence.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
[1] In response to this contention, the State argues, inconsistently with its response to appellant's first assignment of error, that counsel did object to the introduction of Johnson's statements. A review of the transcript, however, reveals that Officer DiMaria primarily testified about Johnson's statements, and no objection by defense counsel was rendered. The two objections cited by the State were during the investigating detective's testimony and Officer Rusnak's testimony.
[2] Counsel did make a general Crim.R. 29 motion as to all the counts of the indictment and, thus, preserved the issue for appeal. SeeState v. Plough (June 8, 2001), Portage App. No. 99-P-0029.