JOURNAL ENTRY AND OPINION
{¶ 1} Defendant-appellant Kevin Williams appeals from his convictions on two counts of attempted murder, two counts of felonious assault, and one count of having a weapon while under disability. His arguments primarily center on the admission of other acts evidence relating to a past criminal charge. He maintains that this evidence not only violated Evid. R. 404(B), but that the state engaged in misconduct by eliciting it and that defense counsel acted ineffectively by failing to seek a limiting instruction as to its use. Williams also maintains that the multiple convictions for attempted murder and felonious assault placed him twice in jeopardy for the same offense. We find no error in the multiple convictions for felonious assault. We conclude, however, that the convictions for one of the counts of attempted murder and one of the counts of felonious assault were allied offenses of similar import. We therefore affirm in part and reverse in part.
 {¶ 2} Williams does not raise any assignments of error directly related to the sufficiency or quality of the evidence against him, so we state the facts in summary form. A group of men were engaged in a dice game in front of a house. Williams and a companion arrived and joined in the game. An argument broke out between Williams and one of the participants over who owed the other money after a throw. At this point, the victim arrived. The victim said that he and his girlfriend were visiting her grandmother's house when they saw a dice game being played on the sidewalk in front of the house. The victim heard the two men arguing and asked what was wrong. They told him that the argument was "nothing," so the victim joined the game. One of the participants testified that he thought *Page 4 
Williams appeared "like he was on drugs or something." The victim joined the dice game and, a short while later, the argument between Williams and the other participant escalated. Williams pulled a gun from the waistband of his trousers. The participants scattered for safety. As the victim ran away, he heard two gunshots and felt a bullet strike him in the back. The victim and the other game participant later identified Williams as the person who held the gun.
 {¶ 3} Williams offered an alibi defense, presenting his sister and two others who testified that he had been at a nightclub on the night of the shooting.
 I {¶ 4} Williams raises three separate arguments relating to the state's impeachment of his sister through a police statement she had made in an unrelated police matter involving him. He argues that because the police statement showed that he had been arrested, it constituted other acts evidence under Evid. R. 404(B); that the state engaged in prosecutorial misconduct by going beyond the bare minimum needed for impeachment; and that counsel performed ineffectively by failing to request a cautionary instruction on how the jury could consider the statement.
 A {¶ 5} Williams presented an alibi defense at trial, notably through the testimony of his sister who testified that he had been with her at a nightclub the entire night of the shooting. At no point during the investigation of the shooting, however, did the sister go to the police and inform them about Williams' alibi. On cross-examination, the state asked her *Page 5 
why she did not go to the police with the alibi. She replied, "[w]hy should I do that? They didn't come to me." When pressed as to how the police would know about the alibi without her coming forward, she admitted that "I can't explain it." The state then asked her if she had given statements to the police in the past. The sister replied "no." The state then asked her to examine and identify a police statement, dated March 23, 2004, that she made in an unrelated shooting. The sister agreed that she made the statement. When asked "who was involved in the shooting," the sister replied, "it was quite a few people involved in the shooting." The state then asked, "[w]ell, was one of those persons involved in the shooting alleged to be your brother, Kevin Williams?" Over objection, the sister replied, "yes." The sister then agreed that she knew it was important to make a police statement, but that in the earlier case the police had called her seeking her statement, whereas in this case, the police did not contact her.
 {¶ 6} The state properly impeached the sister's denial of ever having given a police statement by showing her the 2004 statement she gave the police in an unrelated case involving Williams. Impeachment through a prior inconsistent statement is allowed by Evid. R. 607(A), which states that "[t]he credibility of a witness may be attacked by any party ***." The sister's claim that she could provide an alibi for Williams, but did not come forward with it because the police did not first approach her, put her credibility at issue.
 {¶ 7} Williams appears to concede that the state could impeach the sister with the fact that she made the statement to the police in 2004, but argues that the state went too far by noting that the statement involved a criminal offense unrelated to those charged at his *Page 6 
trial. He maintains that the court should have stopped the testimony at the point where the sister admitted that she had, in fact, given a statement to the police. By allowing the state to inquire about the specifics of what caused his arrest in that matter, Williams contends that the court allowed other acts testimony into evidence.
 {¶ 8} Once the state showed the sister her prior statement, it had accomplished its goal of impeaching her with a prior inconsistent statement. By going into the specifics of what had been involved in the prior case, the state arguably violated Evid. R. 404(B), which prohibits, with certain exceptions that are inapplicable here, the introduction of "other crimes, wrongs, or acts to prove the character of a person in order to show action in conformity therewith." The sister only denied having made a prior police statement — she did not make any claims relating to the substance of that statement which might themselves become a subject of impeachment.
 {¶ 9} Nevertheless, to the extent that the court may have erred by allowing the state to go into the substance of the prior statement, the error was harmless beyond a reasonable doubt. Crim. R. 52(A) defines "harmless error" as "any error, defect, irregularity, or variance which does not affect substantial rights." Williams elected to have the jury decide the weapons under disability count and he stipulated that he was convicted in 2004 of felonious assault. The court informed the jury of this stipulation prior to the sister's testimony. Any information relating to Williams' arrest on the 2004 charges would have been of no consequence to the jury because it knew that he had been convicted following that incident. *Page 7 
We see no possibility that knowledge of Williams arrest, separate and apart from his stipulation to the conviction, would have affected the outcome of the trial.
 B {¶ 10} Williams next argues that he was denied his right to a fair trial by the state's reference to the sister's prior statement and his arrest following from the events described in that statement.
 {¶ 11} We review claims of prosecutorial misconduct under a two-part test. First, we examine whether the actions of the prosecuting attorney rose to the level of misconduct. Second, if the actions did amount to misconduct, we examine the record to determine whether the misconduct deprived the defendant of a fair trial. State v. Smith (1984),14 Ohio St.3d 13, 14; State v. Apanovitch (1987), 33 Ohio St.3d 19, 24.
 {¶ 12} We need not analyze whether the state's impeachment constituted misconduct because, consistent with our earlier conclusion, we find any error to be harmless beyond a reasonable doubt. Williams' assertion that the state offered the statement for the sole purpose of showing that he had shot a man in the past ignores the impact of his stipulation that he had been convicted from that incident. No trier of fact would have been surprised to learn that someone who had been convicted of felonious assault would also have been arrested as a result of committing that offense. Any error would have been harmless and could not have deprived Williams of a fair trial.
 C *Page 8 {¶ 13} Finally, Williams argues that defense counsel was ineffective for failing to seek an instruction limiting the use of testimony about the prior arrest so that the jury would not consider it as substantive evidence of his guilt in this case.
 {¶ 14} To show ineffective assistance of counsel, Williams must first establish that counsel's performance was deficient by showing that counsel committed errors so serious that he or she was not, in effect, functioning as counsel. Strickland v. Washington (1984), 466 U.S. 668,687. Second, Williams must demonstrate that these errors prejudiced his defense such that there exists a reasonable probability that, were it not for counsel's errors, the outcome of the trial would have been different. State v. Bradley (1989), 42 Ohio St.3d 136, 143.
 {¶ 15} Counsel had no duty to request the instruction suggested by Williams because the court had instructed the jury at length in the manner suggested earlier that same day of trial. During the questioning of a police detective, the parties approached the bench and at sidebar entered into a stipulation about Williams' prior conviction. The court informed the jury about Williams' stipulation to the prior conviction by saying:
 {¶ 16} "Now, the defendant is not stipulating that he knowingly acquired, had, carried or used a firearm or dangerous ordnance while being under indictment or having been convicted of a felony of violence on July 8th, 2006. That's the part of the charge the jury is going to decide whether the State has proven or not. *Page 9 
 {¶ 17} "But the defendant through counsel here is stipulating that he was indeed convicted on October 13, 2004 in the Court of Common Pleas, Case 45333 of the crime of felonious assault in violation of 2903.11 and 2923.03.
 {¶ 18} "Everybody understand that? He is not stipulating but [sic] the State is accusing him of having a weapon under disability in 2006, July 8th. But the defendant is admitting, and the parties, the State and the defense, are admitting that he was convicted in 2004 of attempted felonious assault in that docket number somewhere in this Court of Common Pleas."
 {¶ 19} Underscoring that a stipulation to a prior offense did not mean that Williams was stipulating to the current charge, the court went on to say, "[Williams] was convicted in 2004. That doesn't mean that he did the crime in 2006, though, right? That's what's at issue here and that's what the jury will decide."
 {¶ 20} Williams has not challenged either the accuracy or completeness of this initial instruction. Although counsel did not request a new instruction at the time the state impeached Williams' sister with her prior statement, the instruction given to the jury earlier that day was not so remote in time that it could reasonably be argued that the court needed to repeat it. We presume that the jury follows and obeys the court's cautionary or limiting instructions. See State v. Franklin
(1991), 62 Ohio St.3d 118, 127. Williams does not suggest that the jury disregarded this instruction, so the counsel's failure to request a second instruction contemporaneous to the testimony by the sister would not have affected the outcome of trial. *Page 10 
 II {¶ 21} The jury found Williams guilty of two counts of felonious assault and two counts of attempted murder. Williams argues that these multiple convictions for felonious assault and attempted murder violate his right not to be placed in jeopardy twice for the same offense. This argument contains two components: (1) the two convictions for felonious assault must be merged and (2) felonious assault is an allied offense of similar import to attempted murder.
 A {¶ 22} The two felonious assault counts charged different forms of that offense. Count 1 charged, pursuant to R.C. 2903.11(A)(1), that Williams did knowingly cause physical harm to the victim, while count 2 charged, pursuant to R.C. 2903.11(A)(2), that Williams did cause or attempt to cause physical harm to the victim by means of a deadly weapon.
 {¶ 23} The two attempted murder counts also charged different forms of that offense. Count 3 charged, pursuant to R.C. 2903.01(A), that Williams purposely attempted to cause the victim's death, while count 4 charged, pursuant to R.C. 2903.11(B), that Williams attempted to cause the victim's death as a proximate result of committing or attempting to commit an offense of violence that is either a felony of the first or second degree.
 {¶ 24} At sentencing, Williams asked the court to merge the sentences for the two felonious assault counts and to merge the sentences for the two attempted murder counts. Williams then asked the court to merge for sentencing the newly merged felonious assault *Page 11 
and attempted murder counts — in effect, he requested that he be sentenced for a single count of attempted murder. The state noted that two convictions could be sustained for both felonious assault and attempted murder because two shots had been fired. The state conceded, however, that count 1 and count 3 could merge because the element of physical harm was present in each count.
 {¶ 25} The court imposed six-year sentences on the two felonious assault counts and ordered them to be served concurrent to each other. The court ordered seven-year sentences on the two attempted murder counts, and likewise ordered that they be served concurrent to each other, but consecutive to the felonious assault counts. The court merged the one and three-year firearm specifications, and ordered them to be served prior to all other counts. Finally, the court ordered a four-year sentence on the weapon under disability count, to be served consecutively to all other counts. In total, the court ordered Williams to serve a 20-year sentence.
 {¶ 26} R.C. 2941.25(A) states: "Where the same conduct by defendant can be construed to constitute two or more allied offenses of similar import, the indictment *** may contain counts for all such offenses, but the defendant may be convicted of only one." Subsection (B), however, permits a defendant to be convicted of and punished for multiple offenses of dissimilar import. The court did not err by entering a judgment of conviction against Williams on multiple counts of felonious assault because testimony showed that he fired the gun twice. Even though only one of the of two shots struck the victim, the act of *Page 12 
firing the second shot was sufficient to sustain an independent count of felonious assault because it was fired with a separate animus.
 {¶ 27} Williams' citation to State v. Brown, Cuyahoga App. No. 87651,2006-Ohio-6267, certification granted, 115 Ohio St.3d 1424,2007-Ohio-5264, is not on point. The state charged Brown with two counts of felonious assault and one count of domestic violence after she stabbed her boyfriend once. The jury found her guilty of the lesser included offenses of aggravated assault. We held that Brown could only be convicted of one count of aggravated assault:
 {¶ 28} "Here, however, appellant committed only one act of aggravated assault. The indictment contained two separate counts of aggravated assault, each alleging a different means or method, but both referring to a single act. Count one charged appellant with knowingly causing serious physical harm to Johnson, and count two charged appellant with knowingly causing or attempting to cause physical harm to Johnson by means of a deadly weapon or ordnance. There was only one aggravated assault committed. As such, appellant's conviction on both counts of aggravated assault was improper and in violation of double jeopardy safeguards." Id. a ¶ 51.
 {¶ 29} Unlike Brown, this was not a case where two separate charges should be merged because they stemmed from a single act. By firing the gun twice, Williams could be charged and found guilty of committing two separate counts of felonious assault and two separate counts of attempted murder.
 B *Page 13 {¶ 30} Williams next argues that the felonious assault counts were allied offenses of similar import to the attempted murder counts.
 {¶ 31} In State v. Rance (1999), 85 Ohio St.3d 632, 1999-Ohio-291, the supreme court held that a conviction on multiple charges could be upheld when the offenses were (1) of dissimilar import or (2) if they are of similar import, committed separately or with a separate animus or intent. Id. at 636. The test for determining whether two offenses are of similar import is whether the offenses "correspond to such a degree that the commission of one crime will result in the commission of the other." Id., citing State v. Jones, 78 Ohio St.3d 12, 13, 1997-Ohio-38. We do not, however, apply the Rance test in a rigid, mechanistic manner.
In State v. Cabrales, ___ Ohio St.3d ___, 2008-Ohio-1625, the first paragraph of the syllabus states:
 {¶ 32} "In determining whether offenses are allied offenses of similar import under R.C. 2941.25(A), courts are required to compare the elements of offenses in the abstract without considering the evidence in the case, but are not required to find an exact alignment of the elements. Instead, if, in comparing the elements of the offenses in the abstract, the offenses are so similar that the commission of one offense will necessarily result in commission of the other, then the offenses are allied offenses of similar import. (State v. Rance (1999),85 Ohio St.3d 632, 1999-Ohio-291, 710 N.E.2d 699, clarified.)"
 {¶ 33} Ohio courts have repeatedly held that felonious assault and attempted murder are not allied offenses of similar import because the elements of the separate offenses require proof of at least one element that the other does not. See State v. Nicholson, Cuyahoga App. *Page 14 
No. 85635, 2005-Ohio-5687; State v. Jackson, Cuyahoga App. No. 88345,2007-Ohio-2925; State v. Bostick, Cuyahoga App. No. 82933, 2004-Ohio-1902. See, also, State v. Locklear, Franklin App. No. 06AP-259, 2006-Ohio-5949; State v. Turner, Licking App. No. 2006-CA-123,2007-Ohio-4583. We conclude that felonious assault under R.C. 2903.11(A)(1) is not a lesser included offense of attempted murder under R.C. 2903.02(A)(1).
 {¶ 34} Williams acknowledges this precedent but maintains that none of these cases were decided in situations where the defendant had been charged with felony murder under R.C. 2903.02(B) and felonious assault under R.C. 2903.11(A)(2). R.C. 2903.02(B) states that "[n]o person shall cause the death of another as a proximate result of the offender's committing or attempting to commit an offense of violence that is a felony of the first or second degree and that is not a violation of section 2903.03 or 2903.04 of the Revised Code." Felonious assault under R.C. 2903.11(A)(2) states that no person shall knowingly "cause or attempt to cause physical harm to another *** by means of a deadly weapon ***[.]" At a minimum, felonious assault is classified as a felony of the second degree. See R.C. 2903.11(D).
 {¶ 35} Looking at the elements of each offense as required byCabrales, we find that the elements of each offense correspond to the point where the commission of an attempted felony murder as charged in this case results in the commission of felonious assault. The term "offense of violence" is defined by R.C. 2901.01(A)(9) to include felonious assault under R.C. 2903.11. It follows that felonious assault then becomes an element of attempted murder as charged under R.C. 2903.02(A)(2). *Page 15 
 {¶ 36} The cases cited for the proposition that felonious assault is not a lesser included offense of attempted murder do not address felonious assault as charged under R.C. 2903.11(A)(2) — an attempt to cause serious physical harm through the use of a deadly weapon provision — and how it applies to attempted felony murder under R.C. 2903.02(A)(2). This is an important distinction because the elements of the two murder subsections are quite different. R.C. 2903.02(A)(1) requires purpose to cause the death of another. R.C. 2903.02(A)(2) simply states that no person shall cause the death of another as a proximate result of committing a first or second degree "offense of violence."
 {¶ 37} Applied to Williams' act of shooting and missing, the count of attempted felony murder could not be sustained unless the state also proved that a felonious assault occurred. "Serious physical harm" is defined as harm that carries a "substantial risk of death," so it is undoubtedly subsumed within the purpose to cause death to another. At all events, the attempt to cause the death of another by committing a felonious assault necessarily included the attempt to commit serious physical harm by means of a deadly weapon. Williams could not cause or attempt to cause the death of another as a proximate result of committing or attempting to commit an offense of violence that is a felony of the first or second degree without at the same time causing or attempting to cause physical harm to another. We therefore sustain this assignment of error in part, and reverse and remand with instructions to vacate the felonious assault as charged in count 2.[1] *Page 16 
 {¶ 38} This cause is affirmed in part, reversed in part and remanded for further proceedings consistent with this opinion.
It is ordered that the parties bear their own costs.
The court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate be sent to said court to carry this judgment into execution.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
PATRICIA ANN BLACKMON, P.J., CONCURS, ANN DYKE, J., CONCURS IN JUDGMENT ONLY
[1] We are aware that in State v. Axson, Cuyahoga App. No. 81231, 2003-Ohio-2182, this court held that attempted murder under R.C. 2903.02(B) was not a lesser included offense of felonious assault.Axson discussed felonious assault under R.C. 2903.11(A)(1) — not R.C. 2903.11(A)(2) as applicable in this case. Moreover, the panel decided the allied offenses issue under the Rance test and performed a straight comparison of the elements of each offense, concluding that "the elements do not correspond to such a degree that the commission of one offense would result in the commission of the other offense." Id. at ¶ 137. Cabrales no longer requires an "exact alignment of the elements," so the analysis applied in Axson, while correct at the time, is no longer applicable. *Page 1